The People of the State of Illinois, Defendant in Error, v. R. R. Huggins, Plaintiff in Error.

Gen. No. 34,205.

Heard in the first division of this court for the first district at the June term, 1930. Opinion filed June 30, 1930.

CROWE, GORMAN & SAVAGE, for plaintiff in error; BURRELL J. CRAMER, of counsel.

JOHN A. SWANSON, State's Attorney, for defendant in error; EDW. E. WILSON, JOHN HOLMAN and GRENVILLE BEARDSLEY, Assistant State's Attorneys, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this writ of error the defendant, R. R. Huggins, seeks to reverse the judgment of the criminal court of Cook county by which he was adjudged to be guilty of contempt of court, imposing a fine of $25 and sentencing him to a term of 60 days in the county jail of Cook county.

The record discloses that on July 18 the State's Attorney of Cook county filed an information against the defendant Huggins asking that a rule be entered against him requiring him to show cause why he should not be held in contempt of court. The defendant filed his verified answer to the order ruling him to show cause. The matter came on for hearing on July 24, 1929, and the court stated he had read the defendant's answer and that he was of the opinion that the answer did not purge the defendant of the contempt charged against him in the information. Thereupon, it was agreed by both parties that the court might hear the evidence of all the facts in the case and the complaining witness, D. G. Perrin, took the stand and testified at length. At the close of his testimony on that day the cause was continued until September, but the hearing was not resumed until October 19, when the case was again continued to November 9, when defendant, by leave of court, filed an amended answer to the information. The court permitted a verified amended answer to be filed without prejudice to what had theretofore taken place, and the court expressly stated that in reaching a decision he would consider the oral testimony given by the complaining witness, Perrin. Afterwards, on November 16, the judgment finding the defendant to be in contempt and imposing the sentence as above stated was entered.

The record discloses that the complaining witness, Perrin, had been employed by the Baltimore and Ohio Railroad company for about 11 years as a yard brakeman. At the time in question, June and July, 1929, he was working in the vicinity of Wolf Lake, doing yard switching. About June 15, 1929, he was summoned for jury service in the criminal court of Cook county and was assigned for service before Hon. Marcus Kavanagh, then holding court in the criminal court of Cook county. He began his jury service about July

1, and finished the term for which he was summoned about July 12. At the time the complaining witness was summoned for jury service he was working an 8-hour shift in the daytime, which of course would interfere with his service as a juror, and shortly after he was summoned for jury service he reported the fact to one of his superiors and requested that his period of work be shifted from the daytime to another which began in the nighttime and ended early in the morning. Under the rules under which the complaining witness was working, he had a right to demand of the railroad company that the time he was to work be shifted from day to the nighttime and the shift was accordingly made. Shortly after complaining witness began his jury service, he testified, it became apparent that he could not work the full 8 hours required during the night period, because if he did so he could not report for the jury service at the opening of court, so he quit his work an hour or so before his shift was up.

From his testimony it further appears that he reported the fact that he could not work the 8 hours during the nighttime and report in time as a juror, and that he was permitted to leave on one or two occasions before the completion of his 8 hours' work. The evidence further shows that when the fact that the complaining witness was leaving before his service was completed came to the attention of Huggins, the defendant, complaint was made of this fact, and the complaining witness was notified that he could not leave his work before he had completed the number of hours required of him; that Huggins advised complaining witness of this fact and told him that if he desired he could be given earlier night shifts where he would work the full time and yet appear in court at the proper hour if he desired to do so. And the complaining witness further testified that he told Huggins he would consider the matter and that afterwards he never communicated to anyone whether he would ac-

cept the earlier shift, but it appears that he continued to work on the shift designated by himself as above stated. Complaining witness also testified that when complaint was made about his leaving his work before it was time to do so, he stated that the railroad company could place him on the "layoff list" until he was through with jury service. He stated, "they should have placed me on the layoff list, should have allowed me a layoff." On cross-examination he testified that at the time he was notified to appear for jury service he did not ask for a layoff, and a consideration of his entire testimony discloses the fact that at no time did he ask that he be laid off during his jury service. The most that can be said is that he testified to the fact that the railroad company should lay him off without his request.

The record further discloses that a day or so after Perrin had completed his jury service on July 12, he was called before the defendant and there was a hearing of the complaint made against him, and on July 15 Huggins wrote a letter to complaining witness dismissing him from the service of the railroad company. The letter stated, "You are hereby dismissed from the service of this company for leaving your tour of duty without permission before the expiration of your 8 hours and for insubordination which was developed during investigation in my office on July 13th and I respectfully request that you turn back your company property." Two days later Perrin complained to the State's Attorney and the next day the information was filed, the charge being, as stated in the information, that the discharge of Perrin "was highly prejudicial to the proper administration of the criminal law" in the court presided over by Judge Kavanagh.

In his amended answer Huggins denies that he had done anything tending to obstruct the administration of justice, and that he did not intend to act in contempt of the court or to do anything disrespectful.

The answer further set up the facts with reference to Perrin's request for a change of the hours he was to work on account of his jury service, and that under the rules the transfer was required to be made as requested, and further that Perrin did not request to be laid off during the time he was serving as a juror and that if he had done so, his request would have been granted. Further facts are set up in the answer substantially as testified to by the complaining witness and hereinbefore set forth as to the nature of the complaint, and that Perrin might have had an earlier night shift which would have permitted him to work for the railroad company as well as to serve as a juror if he desired to do so. The answer further alleged that the defendant was not authorized to discharge Perrin; that this could be done only by another employee occupying a superior position in the railroad company's employ.

The complaining witness gave testimony to the further effect that one of the reasons he wanted a night shift while he was serving as a juror was that the railroad was short of men, and the court, in summing up the case, stated: "He (Perrin) says that the railroad company was very hard up for men, and he was trying to please the railroad company as well as do his duty as a juror." The court further stated that he was of the opinion that Perrin would not have been discharged except for the fact that he was serving on the jury and further, "that they wanted to discharge him anyway, because he is sort of a 'switch yard lawyer,' and they used this opportunity to discharge him because he was on jury service."

Of course it is the duty of every good citizen to serve on a jury and we think it would be contemptuous conduct on the part of a person's employer to discharge him because he was performing his duty as a citizen in the courts, as a juror.

The court found as a fact that Perrin's jury service was highly satisfactory, and counsel for the defendant contends that in view of this finding, and the fact that Perrin was not discharged until after his term of service had expired, show that no contempt of court could have been committed. But we think this argument is unsound. *Sinclair v. United States,* 279 U. S. 749.

Upon a careful consideration of all the evidence in the record, we are clearly of the opinion that the judgment of the court finding the defendant, Huggins, guilty of contempt is against the manifest weight of the evidence. From complaining witness Perrin's testimony it clearly appears that while he was performing his service as a juror he desired to continue working for the railroad company, and it was at his own request that he was assigned to work for the railroad company during a night shift. He did not request nor did he want to be laid off. He had a right, under the rules under which he was employed, to demand to be changed to the night shift at his request, and obviously he could not demand a night shift and then arbitrarily work only a part of that period. When he was told by Huggins that he could have an early night shift he said he would take the matter under advisement and admits that he never made any answer to Huggins or anyone else.

The judgment of the criminal court of Cook county is against the manifest weight of the evidence and it is reversed.

*Reversed.*

MATCHETT, P. J., and McSURELY, J., concur.