RAY PALMATEER, Plaintiff-Appellant, *v.* INTERNATIONAL HARVESTER COMPANY, Defendant-Appellee.

Third District   No. 78-394

Opinion filed June 12, 1980.

BARRY, J., dissenting.

Gerald J. Meehan, of Coryn, Walker & Meehan, of Rock Island, for appellant.

Stuart R. Lefstein, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Rock Island County, Illinois, dismissing plaintiff's complaint with prejudice.

On February 16, 1978, plaintiff, Ray Palmateer, filed suit against his former employer, International Harvester, alleging the following facts. Palmateer began working for International Harvester in East Moline, Illinois, in 1962. In 1966, at International Harvester's request, Palmateer left the union for a nonunion training position. In 1968, he assumed a position in management, foregoing all union contract benefits, in reliance upon International Harvester's promises to pay him a salary and provide various benefits. Palmateer continued to work for International Harvester, expecting to do so until he retired. In 1977, International Harvester discharged Palmateer, stating as reasons for the discharge that (1) Palmateer had given to a law enforcement agency evidence that an employee of International Harvester might be involved in a violation of the Criminal Code of the State of Illinois; (2) Palmateer agreed to assist the law enforcement agency in gathering further evidence; and (3) Palmateer intended to testify against the said employee in a court of law should he be requested to do so. On the basis of the alleged facts, Palmateer requested compensatory and punitive damages for breach of contract, wrongful discharge, violation of constitutional and civil rights, and intentional infliction of severe emotional distress.

International Harvester filed a motion to dismiss, which was granted. In a written opinion on his ruling, the trial judge held that International Harvester and Palmateer had an employment contract at will which was subject to termination by either party with or without cause at any time without liability. The trial judge also dismissed the complaint for emotional distress. The trial judge found that both the Illinois Supreme Court and the Third District Appellate Court had refused to sustain a complaint for emotional distress and stated that any change in this law should be announced by a court of review rather than a lower court. On June 5, 1978, judgment was entered for International Harvester and against Palmateer on all counts.

On appeal Palmateer raises two issues:

1. Whether the complaint filed by him states a valid cause of action for wrongful discharge by an employer of an employee, and

2. Whether the trial court erred in dismissing the cause of action for intentional infliction of emotional distress.

■■ Ordinarily an employment contract is terminable at any time, with or without cause, by either party, unless the contract itself specifies a duration. (*Atwood v. Curtiss Candy Co.* (1959), 22 Ill. App. 2d 369, 161 N.E.2d 355; *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 366 N.E.2d 1145; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Even though salary or other terms are calculated on a monthly or annual basis, the contract does not automatically have a monthly or annual duration. (*Atwood.*) The duration must be specifically stated.

■■ Palmateer attached a copy of a retirement benefits pamphlet to his complaint. He argues that because International Harvester agreed to provide certain retirement benefits to him, they impliedly agreed to employ him until his retirement. This is not sufficient. This is a contract which cannot be performed within one year and therefore is unenforceable under the statute of frauds, which requires a writing signed by the party to be charged or his thereunto lawfully authorized agent. (*Sinclair v. Sullivan Chevrolet Co.* (1964), 31 Ill. 2d 507, 202 N.E.2d 516.) There is no such writing here. Therefore, even if there were an implied contract to employ Palmateer until he retired, it would be unenforceable. Thus, in the absence of a contract specifying a duration, the parties had an employment contract at will.

Historically, an employment contract at will meant that the contract could be terminated at any time, with or without cause, by employer or employee. However, since society has become more industrialized and we have all become more dependent upon each other for our livelihood, the tort of wrongful discharge has developed.

■■ In Illinois, an employer is liable when he terminates a contract at will if that termination violates a contract provision, a statute, or public policy. The majority of Illinois cases which have granted damages for breach of contract contrary to public policy have involved a firing because the employee filed a workman's compensation claim. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 366 N.E.2d 1145.) Our research shows no Illinois case in which an employee has been fired because he provided information to the police, agreed to gather more information against a fellow employee and agreed to testify if requested to do so. We have been reluctant to expand any tort unless we have been given cogent reasons for the expansion. We do not believe that such reasons exist here.

Palmateer has also charged International Harvester with intentional

infliction of emotional distress. He has alleged that the attempt to force him to resign and his subsequent firing a day later caused him to suffer severe emotional distress, "in that the Plaintiff, by virtue of said acts and conduct, was intimidated, harrassed, humiliated, shamed and disgraced, suffering great mental and physical anguish, sleeplessness, nervousness, weight loss, depression and anxiety, thereby endangering his health and well-being."

The elements of the tort of intentional infliction of emotional distress are:

1. the extreme and outrageous conduct of the defendant;

2. the intent by the defendant to cause emotional distress or the reckless disregard of the probability of causing emotional distress;

3. the severe or extreme emotional distress suffered by the plaintiff;

4. the actual or proximate causation of emotional distress by the defendant's outrageous conduct. *DeBolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373.

■■ The conduct of the accused tortfeasor must be so outrageous and extreme that it goes beyond the bounds of human decency. (*DeBolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373; Restatement (Second) of Torts §46, Comment *d* (1965).) In the instant case, there was a firing of an employee at will, which was within the employer's rights. There was no allegation of anything further. This is clearly not the outrageous conduct required.

Therefore, we do not find that Palmateer has stated a cause of action for the intentional infliction of emotional distress.

For the reasons stated above, the judgment of the circuit court of Rock Island County is hereby affirmed.

Judgment affirmed.

ALLOY, J., concurs.

Mr. JUSTICE BARRY, dissenting:

I agree with the majority that under *DeBolt* the plaintiff has not stated a cause of action for an intentional infliction of emotional distress. However, from that portion of the majority opinion that refuses to recognize the existence of a cause of action for the discharge under the facts of this case, I must respectfully dissent. The single issue presented, in my view, is whether the granting of defendant's motion to dismiss was proper. I believe it was not. At the heart of the majority opinion is a reluctance "to expand any tort unless we have been given cogent reasons for the expansion." However, "cogent reasons" are indeed present in this

case, as the action of the employer defendant in discharging the plaintiff employee with the aim of subverting the laws of the State of Illinois clearly violates public policy.

The cause of action put in this case is for the tort of *retaliatory discharge*. It has been recognized that the law of tort is a battleground of social theory in which the court, while seeking a fair determination of the competing claims of the litigant, recognizes the general interests of society in the form of public policy. (Prosser, Torts §3, at 14-15 (4th ed. 1971).) In recognizing the needs of society, I believe the modern and more enlightened trend has been to acknowledge that the retaliatory discharge of an employee motivated by reasons which contravene established public policy is an actionable tort. "The law governing the relations between employer and employee has * * * evolved over the years to reflect changing legal, social and economic conditions." (*Monge v. B.B. Beebe Rubber Co.* (1974), 114 N.H. 130, 132, 316 A.2d 549, 551.) We should not now ignore the new climate prevailing generally in the relationship of employer and employee.

No authority need be cited in support of the general proposition that the employment of an employee at will may be terminated at any time for any reason. However, reflecting this new climate in employment relationships, the right of an employer to discharge an employee at will is no longer unbounded. That an employer has "an absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge." *Harless v. First National Bank* (1978), ___ W. Va. ___, 246 S.E.2d 270, 275.

The ultimate question of fact in this case, then, is whether the defendant's, International Harvester's, conduct violates the public policy of the State of Illinois. Although public policy is not subject to precise definition, it has been broadly defined as "that principle of law which holds, that no subject or citizen can lawfully do that which has a tendency to be injurious to the public, or against the public good." (*People ex rel. Peabody v. Chicago Gas Trust Co.* (1889), 130 Ill. 268, 294, 22 N.E. 798, 803.) It concerns what is right and just, good morals, natural justice, and generally any matter which would affect the citizens of the State collectively. The laws by which the people govern themselves reflect this collective belief of what is right, just and morally correct. " 'The public policy of a State is to be found embodied in its constitution and its statutes. When these are silent upon the subject, then in the decisions of its courts.' " *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 1024, 366 N.E.2d 1145, 1147.

One substantial public policy principle which has resulted in the judicial creation of a cause of action for retaliatory discharge is the right of an employee injured during course of employment to obtain workmen's compensation. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *accord, Sventko v. Kroger Co.* (1976), 69 Mich. App. 644, 245 N.W.2d 151; *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425.) However, the holding of *Kelsay* should not, as the majority intimates, be restricted only to those cases of retaliatory discharge in which the termination was the result of the filing of a workmen's compensation claim against the employer. Such an interpretation effectively deters future discharges based upon workmen's compensation filings, but has little or no deterrent effect on punitive employee termination equally as violative of public policy but based on other grounds.

The only case supporting the position suggested by the majority is *Martin v. Platt* (Ind. App. 1979), 386 N.E.2d 1026, in which an Indiana appellate court, relying on the narrow language of *Frampton*, decided that employees at will who were allegedly discharged for reporting to a superior that their immediate superior was soliciting and receiving kickback payments from suppliers could not maintain an action for retaliatory discharge. In the *Frampton* decision, the Indiana Supreme Court determined that the threat of discharge was a prohibited "device" within the statute prohibiting a contract, agreement, rule, regulation or other device relieving an employer of his obligation under the Indiana workman's compensation law, and therefore a retaliatory discharge for the filing of a workman's compensation claim was declared a wrongful and unconscionable act, actionable in a court of law.

Because of the *Frampton* court's reliance on the language of Indiana workman's compensation statute, the *Martin* court was rightly cautious in extending the exception. However, the Illinois Supreme Court, in recognizing a cause of action in tort based on the retaliatory discharge of an employee for filing a workman's compensation claim, did so in recognition of public policy considerations. At the heart of the *Kelsay* opinion is the belief that "an 'employer at will is not free to discharge an employee when the reason for the discharge is an intention on the part of the employer to contravene the public policy of [the] State.' " (74 Ill. 2d 172, 183, 384 N.E.2d 353, 358, quoting *Sventko*, 69 Mich. App. 644, 647, 245 N.W.2d 151, 153.) What was of concern in *Kelsay*, as it is here, is whether public policy is violated by the action of the employer. The manner in which that public policy is violated is of no real import. Public policy is certainly violated when an employee is fired for filing a workmen's compensation claim. Public policy is equally as violated when

an employee is discharged because he gave information regarding criminal activity to law enforcement authorities. Accordingly, courts in a number of cases have recognized the existence of a cause of action for retaliatory discharge whenever public policy, in whatever form, is violated, and some have found motions to dismiss based upon failure to state a cause of action erroneously granted. *Petermann v. Teamsters Local 396* (2d Dist. 1959), 174 Cal. App. 2d 184, 344 P.2d 25 (alleged retaliatory discharge for the refusal to commit perjury presented cause of action); *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353 (retaliatory discharge for filing workman's compensation claim); *Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 366 N.E.2d 1145 (motion to dismiss retaliatory discharge action based on filing a workman's compensation claim wrongly granted); *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425 (retaliatory discharge for filing a workman's compensation claim); *Sventko v. Kroger Co.* (1976), 69 Mich. App. 644, 245 N.W.2d 151 (cause of action for retaliatory discharge based on filing a workman's compensation claim should be heard on merits); *Monge v. B.B. Beebe Rubber Co.* (N.H. 1974), 316 A.2d 549 (judgment for compensatory damages for female employee harassed by employer's foreman forcing attention upon her); *Pierce v. Ortho Pharmaceutical Corp.* (1979), 166 N.J. Super. 335, 399 A.2d 1023 (alleged constructive discharge due to conflict in medical opinion concerning the advisability of testing a drug on clinical patients); *O'Sullivan v. Mallon* (1978), 160 N.J. Super. 416, 390 A.2d 149 (retaliatory discharge for X-ray technician's refusal to perform medical tasks which were illegal for her to perform); *Reuther v. Fowler & Williams, Inc.* (1978), 255 Pa. Super. 28, 386 A.2d 119 (retaliatory discharge after thwarting employee's performance of jury duty recognized as a cause of action); *Harless v. First National Bank* (1978), ___ W. Va. ___, 246 S.E.2d 270 (cause of action for retaliatory discharge for efforts to bring to attention of employer, and to urge compliance with, State and Federal consumer credit and protection laws). *Contra, Hinrichs v. Tranquilaire Hospital* (Ala. 1977), 352 So. 2d 1130.

A number of other cases have recognized the existence of a cause of action for retaliatory discharge, but found the discharged employees' claims not to be actionable due to the absence of public policy violations that were clear and substantial. *Jackson v. Minidoka Irrigation District* (1977), 98 Idaho 330, 563 P.2d 54 (found that "public employee who participated in wrongly accumulated Christmas fund" activities had a hearing and was properly discharged); *Abrisz v. Pulley Freight Lines, Inc.* (1978), ___ Iowa ___, 270 N.W.2d 454 (found at trial that this discharged employee made untrue statements reflecting on integrity of employer in connection with another's unemployment benefits claim); *Campbell v. Ford Industries, Inc.* (1976), 274 Or. 243, 546 P.2d 141 (proprietary right

of former employee stockholder to examine corporate records did not invoke a public policy consideration supportive of a cause of action); *Roberts v. Atlantic Richfield Co.* (1977), 88 Wash. 2d 887, 568 P.2d 764 (verdict directed against employee at close of his case, no statutory right regarding age discrimination or otherwise having been alleged or proven); *Geary v. United States Steel Corp.* (1974), 456 Pa. 171, 319 A.2d 174 (no clear mandate of public policy violated when discharge was in retaliation of employee plaintiff pointing out unsafe nature of tubular products for the oil and gas industry).

In *Kelsay* the employer was found to be liable in tort for the discharge of an employee who desired to assert her statutory right to workman's compensation. In the instant case, the plaintiff Palmateer was not attempting to assert any such statutory right, but *was* asserting a public right and exercising a civic duty. In both cases, the reason for the discharge was a serious socially undesirable motive. It is not logical to penalize the employer in *Kelsay* and the employee in this case when the motivations for the discharge are legally indistinguishable. It is the employer who should be penalized here, not Palmateer. Yet, as a result of the majority's decision Palmateer goes without a remedy. No justice is served by such a result.

There can be no doubt that International Harvester's conduct in this case violates public policy. Retaliatory discharge by an employer as a means of intimidating an employee to prevent his cooperation with the police in the enforcement of the laws is contrary to the expressly stated public policy of this State as contained in various sections of our Criminal Code of 1961. Sections 31—4, 31—8, 32—1 and 32—4 of the Criminal Code of 1961 proscribe respectively obstruction of justice, refusing to aid a police officer, interfering with jurors or witnesses called to testify, and compounding a crime. (Ill. Rev. Stat. 1977, ch. 38, pars. 31—4, 31—8, 32—1 and 32—4.) More recently, Public Act 81-808, effective January 1, 1980, adds a section to the Criminal Code of 1961 which prohibits discharge or punishment or threat of punishment by an employer when his employee who is a witness to a crime is absent from his employment because of his subpoenaed attendance at criminal proceedings. The penalty provided is contempt of court. Analogous to this new statute are two cases wherein it was held to be contrary to the public policy of Illinois for an employer to discharge an employee for his service upon a jury, and the suggestion of punishment for the employer's wrongful action was the use of that court's contempt power against him. (*People v. Vitucci* (1964), 49 Ill. App. 2d 171, 199 N.E.2d 78; *People v. Huggins* (1930), 258 Ill. App. 238.) These cases and statutes expressly proscribe activity of essentially the same character as complained of by the plaintiff, Palmateer.

In the present case the trial court ruled favorably upon the

defendant's motion to dismiss and accordingly was obliged to accept the allegations of the complaint as true. We are likewise bound to accept as true the allegations complaining of the defendant's improper motives for discharge of plaintiff. I believe the plaintiff has stated a justiciable cause of action in tort. Whenever an employer discharges an employee with the intent in so doing to obstruct justice or to avoid the discovery of violations of the laws of this State, the employer may be liable for damages incurred by the employee as a result of the discharge. The time has arrived to permit recovery or at least to allow the employer's motivation to be tested.

The case before us does not involve some vaguely expressed public purpose. The important question remains: What is the public policy of Illinois, and does it include the efficient operation of our criminal justice system? The express purpose of the Criminal Code of 1961 is to investigate criminal activity and to apprehend criminals. Any obstruction of that purpose clearly violates public policy and must be removed. If allowed to go unchecked, it will destroy the entire framework of justice.

It is the duty of the employee to disclose evidence of criminal activity, and I submit his right to do so as well. Our law should allow for encouragement of people with information to cooperate with the authorities. It is our duty by what we decide to encourage employees to assert public rights. In view of what I believe to be our public policy, under the circumstances of this case, retaliatory discharge is a wrongful act, and is actionable. To arm employers, unethical or not, with common law authority by allowing the trial court's dismissal to stand would insulate employers to an extent not contemplated by our very important public policy which I have recited herein.

The trial court's granting of the motion to dismiss was error, and the judgment of the Circuit Court of Rock Island County should be reversed and the case remanded consistent with the views expressed herein.