Joanne Furman TOBIAS, Roger J. Tobias, Dale L. Koch, Respondents,

v.

MONTGOMERY WARD AND COMPANY, INC., Appellant.

Nos. C6–84–1047, C8–84–1048 and CX–84–1049.

Court of Appeals of Minnesota.

Feb. 12, 1985.

Review Granted May 1, 1985.

Joel T. LeVahn, Edward J. Hance Law Offices, Ltd., Minneapolis, for respondents.

Stephen P. Watters, Brian P. Lutterman, Messerli & Kramer, Minneapolis, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG, and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

Montgomery Ward appeals from judgments entered in favor of three of its former management employees for overtime meal allowances unpaid during their terms of employment. The cases of respondent Joanne Furman Tobias, Roger Tobias and Dale Koch were consolidated for trial in conciliation court. Judgment for the employees was entered following appeal to district court, and a court trial. We reverse.

## FACTS

The Tobiases and Koch were management employees in Montgomery Ward [hereafter, Wards] stores during the years 1977 to 1981. As managers, their duties on two nights of the week required working until the store closed, which was not until 9 P.M.

The company's Personnel Manual included the following provision:

b. *Management and Supervision Employees* who do not receive extra compensation for night overtime will receive either cash allowances for meals or meals without charge.

Night overtime work must be in excess of two hours beyond normal quitting time (at least past 6 P.M.) in order to qualify for a meal allowance.

The Personnel Manual was not distributed to employees, either managers or hourly employees. Instead, a "Fact Book," an employee handbook, was given to beginning employees. Other handbooks and brochures specific to particular duties were distributed from time to time.

At least two Personnel Manuals were maintained in every store—one each by the personnel manager and store manager, and one by the comptroller, if the store had one. Two of the respondents, the Tobiases, were personnel managers at times during the period involved, and were thus familiar with the manual.

The respondents conceded that the evening work was mandatory, that they were scheduled to work extra hours two nights per week. They testified that they were expected to work from 48 to 56 hours per week (including some Saturdays). Thus, there was no doubt that their "scheduled quitting time" extended to at least 9 P.M. on the two evenings per week. The manual, however, uses the term "normal quitting time," explained only as "at least past 6 P.M."

## ISSUE

Was the Personnel Manual provision part of the employment contract between Wards and its management employees?

## ANALYSIS

The leading Minnesota case on personnel handbooks or manuals as forming part of the employment contract is *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983). The court there held that, although general statements of policy do not meet the contractual requirements of an offer, more definite terms in a handbook or manual may become part of the employment contract if the requirements for formation of a unilateral contract are met. 333 N.W.2d at 627. Those requirements are: an offer, communicated to the offeree, an acceptance by the offeree, and consideration. *Id.* at 626–27.

The requirement of communication to the offeree presents the only genuine issue here. The meals allowance provision was not in the handbook distributed to

employees, nor was it otherwise disseminated to them. The provision on disciplinary procedures held to be part of the contract in *Pine River* was contained in the handbook distributed to employees. The trial court here rejected Wards' position that such a distribution was essential to "communication." The court noted the availability of the manual to the management employees and their intended use of it.

The supreme court has held that a personnel policy manual, not distributed to employees, did not become a part of the employment contract. *Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 117 N.W.2d 213 (1962). In *Cederstrand* the plaintiff was the company personnel director, who recorded employment policies in the manual herself, and maintained the sole copy. The court, nevertheless, stated as follows:

> The fact that the dismissal provision was not included in the Employee's Manual, given to new employees explaining important personnel regulations, indicates that plaintiff did not consider it as a provision of her employment relationship. * * * The fact that it was not important enough to be included in the employee's handbook or employee's bulletins indicates forcefully that during its entire existence it was not regarded as a contractual offer to all employees, but merely as a policy guide for supervisory personnel.

*Id.* at 534, 117 N.W.2d at 222.

Although the holding in *Cederstrand* arises from an unusual factual situation, courts in other jurisdictions have required more than employee access to the manual before finding communication of an offer. Thus, in *Hinkeldey v. Cities Service Oil Co.,* 470 S.W.2d 494, 497 (Mo.1971), not only was the manual not protected or kept confidential, but the company directed that its provisions were to be disseminated to employees. Two of the respondent employees here regularly consulted the Personnel Manual while serving as personnel managers. In *Brooks v. Trans World Airlines,*

*Inc.,* 574 F.Supp. 805, 809 (D.Colo.1983), however, the employee not only consulted the manual, but was promised the manual would govern as to the terms of his employment.

### DECISION
The overtime meals allowance provision was not communicated to Wards' management employees and, therefore, did not become part of respondents' employment contract.

Reversed.