RICHARD E. KOCH, Plaintiff-Appellant, v. ILLINOIS POWER COMPANY *et al.*, Defendants-Appellees.

Third District   No. 3—87—0699

Opinion filed September 28, 1988.—Rehearing denied November 2, 1988.

Bernard L. Engels, of Armstrong, Surin & Engels, of Ottawa (Craig M. Armstrong, of counsel), for appellant.

Rayna Eller and Arthur J. Kowitt, both of Mayer, Brown & Platt, of Chicago (James W. Gladden, Jr., of counsel), for appellee Illinois Power Company.

James A. McPhedran, of Anthony C. Raccuglia & Associates, of Peru, for other appellees.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiff, Richard E. Koch, originally brought this action in 1984 in the circuit court of La Salle County, charging the defendant Illinois Power Company (IPC) with breach of an employment contract, breach of an implied covenant of good faith and fair dealing, wanton and willful breach of contract, violation of plaintiff's constitutional right of privacy, and intentional infliction of extreme emotional distress. The original complaint in this action also cited one count against defendant Carroll Marchant for tortious interference with contract. Defendants moved for summary judgment on all counts in September 1985; the trial court granted the defendants' motion on four of the six claims. After redeposing plaintiff, defendants moved again, in October 1986, for summary judgment on the two remaining counts, which claimed breach of contract and tortious interference with contract. In December 1986, plaintiff filed a motion to amend his complaint to reflect a recent development in the law. This appeal arises from the trial court's order, dated February 4, 1987, granting defendants' second motion for summary judgment and denying plaintiff's motion to amend. Plaintiff appeals the portions of the order granting summary judgment which involve IPC and the denial of his motion to amend. Plaintiff also appeals the trial court's denial of his August 1987 motion for leave to depose an IPC official.

This appeal presents several issues for decision: (1) whether the trial court properly granted summary judgment for defendant IPC and against plaintiff, finding that there was no oral contract between the parties and that any alleged contract failed for lack of consideration and lack of mutuality; (2) whether the trial court properly granted summary judgment in favor of IPC and against plaintiff, finding that any alleged oral contract failed under the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 et seq.); (3) whether the trial court properly granted summary judgment in favor of IPC on plaintiff's claim that a collective bargaining agreement between IPC and the Internal Broth-

erhood of Electrical Workers was incorporated into plaintiff's alleged employment contract; (4) whether the trial court properly granted summary judgment in the favor of IPC in finding that the IPC "Guidelines for Discipline" did not create a contract with plaintiff; (5) whether the trial court properly denied plaintiff's motion to amend his complaint; and (6) whether the trial court properly denied the plaintiff's motion for leave to take the deposition of an IPC official.

IPC initially employed plaintiff in 1953 at his Decatur, Illinois, facility. Plaintiff worked as a unionized employee, represented by the International Brotherhood of Electrical Workers, in various positions. In 1965, plaintiff accepted a nonunion, supervisory position as a welding training advisor which he held until 1967, when he was promoted to the position of assistant gas distribution superintendent at IPC's La Salle, Illinois, plant. In 1970, plaintiff became the gas distribution superintendent at the La Salle facility and served in that capacity until IPC dismissed him in 1982.

In 1979, plaintiff developed a social relationship with Debra Hardersen, a unionized employee at the La Salle IPC facility. IPC and Carroll Marchant, plaintiff's supervisor, believed this relationship created turmoil in the office. After initially recommending a salary increase and favorable rating for plaintiff at his annual evaluation in February 1982, Marchant rescinded these findings due to the controversy surrounding the social relationship. Marchant told plaintiff that the decision would be reviewed if changes in the situation so warranted. After the February rescission, several IPC officials, including Marchant, met with plaintiff numerous times to discuss the interoffice turmoil and methods to stop it. IPC informed plaintiff that his actions constituted sexual harassment as plaintiff was giving Ms. Hardersen special treatment while in a social relationship with her. IPC suggested in April 1982 that plaintiff either obtain Ms. Hardersen's resignation or accept a transfer to another IPC facility without a salary reduction. When plaintiff refused the transfer, IPC viewed the action as a resignation effective May 11, 1982.

Plaintiff based his contract claims on oral representations allegedly made to him when he first accepted promotion to IPC's supervisory ranks in 1964 and on disciplinary guidelines issued by IPC on September 1, 1981. Plaintiff claims that when Merlin Barber, an IPC official, approached him about the nonunion welding training advisor position, Barber allegedly promised plaintiff that he would retain the union contract protection against job termination if he accepted the job change. Plaintiff claimed to have relied on Barber's representation when deciding to accept the IPC offer, which plaintiff also claimed

was for permanent employment.

In 1981, IPC issued Guidelines on Discipline for Illinois Power Company (Guidelines), an employer's handbook. Plaintiff received a copy of the guidelines due to his status as a supervisor. The handbook describes a suggested disciplinary process for use at IPC facilities, emphasizing rehabilitation and progressive discipline. Plaintiff argues that the guidelines created a contract for employment with IPC, which his discharge violated.

■■ ■ To be valid, an oral contract for permanent employment needs to contain a clear and definite agreement and be supported by sufficient consideration. (*Ladesic v. Servomation Corp.* (1986), 140 Ill. App. 3d 489, 488 N.E.2d 1355, citing *Titchener v. Avery Coonley School* (1976), 39 Ill. App. 3d 871, 350 N.E.2d 502.) The purported contract in this case lacked both of these elements.

The oral agreement between plaintiff and IPC was anything but clear and definite. Plaintiff could not recall the language used by Merlin Barber in making the oral contract for IPC. He expressed his belief that he would have some sort of representation in disputes with IPC but was unable to state anything more specific than the idea he was to have the same protection he had had while in the union. Clear and definite language is required as courts should not rewrite a contract by imposing an obligation where none is intended. (*Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 381 N.E.2d 21.) In this case, the language of the oral contract was so uncertain the court would have had to restructure it with new, more definite terms for an enforceable agreement to exist. The alleged oral contract must fail for lack of clarity and definition.

■ The purported contract also fails for lack of sufficient consideration. Plaintiff claims that his relinquishment of a union position in reliance on an oral contract for permanent employment constitutes sufficient consideration. Some disagreement exists in Illinois courts on the issue whether such an action will support a contract for permanent employment. The better view, however, states that foregoing a position is not adequate consideration. See *Heuvelman v. Triplett Electrical Instrument Co.* (1959), 23 Ill. App. 2d 231, 161 N.E.2d 875; *Titchener*, 39 Ill. App. 3d 871, 350 N.E.2d 502; *Ladesic*, 140 Ill. App. 3d 489, 488 N.E.2d 1355.

In *Heuvelman*, an employee purportedly rejected an offer of employment from a competing company in reliance on his employer's oral promise of permanent employment. The plaintiff/employee in *Titchener* allegedly abandoned a tenured position with one school district in exchange for the oral promise of permanent employment of an-

other district. In each case, the respective court found that the plaintiff's actions were not sufficient consideration to support the alleged oral contracts. *Heuvelman*, 23 Ill. App. 2d at 236, 161 N.E.2d at 878; *Titchener*, 39 Ill. App. 3d at 875, 350 N.E.2d at 507.

In *Ladesic* (140 Ill. App. 3d at 490, 488 N.E.2d at 1356), an employee while working for a catering company, received an offer of employment from a competing company. The employee rejected the offer in reliance on a purported oral contract for permanent employment with his employer. The court found that the employee's action did not constitute sufficient consideration. The *Ladesic* court properly rejected the decision in *Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998, which had departed from the *Heuvelman* and *Titchener* rule by finding sufficient consideration when an employee relinquished his right to accept a more lucrative position. We agree with the reasoning in *Ladesic* (140 Ill. App. 3d at 492, 488 N.E.2d at 1357), that the reasoning in *Martin* was faulty because:

> "[T]he employee is not rejecting a more lucrative position. Instead, he is merely comparing the benefits of one position with another, since any employee accepting one job offer necessarily rejects others. [Citations.]"

The plaintiff here, similarly to the plaintiffs in *Heuvelman*, *Titchener*, and *Ladesic*, did not give up anything of value when relinquishing his position in exchange for an alleged oral contract. The plaintiff in this case simply examined the union and nonunion jobs and elected to accept the nonunion supervisory position. He did not give up anything of value. His action did not provide sufficient consideration to support his alleged oral contract with IPC.

■ Plaintiff's alleged contract also fails for lack of mutuality. According to plaintiff, although the oral contract was for permanent employment, he was free to leave IPC's employ at any time. Although mutuality is not an essential element for creation of an enforceable contract, mutual promises can be the consideration when no other consideration exists. (*Martin*, 109 Ill. App. 3d at 603, 440 N.E.2d at 1004, citing *Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 133 N.E. 711.) Mutuality becomes important in this case as there was not sufficient consideration supporting the alleged contract for permanent employment. However, mutuality cannot be said to exist when an employee is free to leave his/her position but claims that the employer is not equally free to dismiss him/her. It would indeed be an anomalous situation raising serious questions of mutuality to interpret an obligation of an employer/defendant to em-

ploy an employee/plaintiff for a given period if the employee were able to quit whenever he so desired. (*Buian v. J. L. Jacobs & Co.* (7th Cir. 1970), 428 F.2d 531.) The lack of both mutuality and sufficient consideration in *Buian* each played a role in the court's decision that an employment contract was at will, not for definite duration. In *Buian*, the plaintiff claimed he had an employment contract of specific term although he could leave the job when he wished. (*Buian*, 428 F.2d at 533.) The court in *Payne v. AHFI/Netherlands, B.V.* (N.D. Ill. 1980), 522 F. Supp. 18, similarly found an employment agreement to be at will rather than for definite duration in part due to lack of mutuality in the agreement. In *Payne*, an employee claimed to have an employment contract of specific duration although he was free to quit the position at any time and the writing on which he relied gave an approximate, rather than specific, term for the contract. (*Payne*, 522 F. Supp. at 22.) The lack of mutuality made the contract illusory and unenforceable. *Payne*, 522 F. Supp. at 22.

■ Enforcement of the contract is also barred by the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1). In order to meet the requirements of the Statute of Frauds, the oral contract must be capable of being fully performed within one year from the date the contract was formed. The alleged contract in this case could have ended due to plaintiff's death or cessation of business by IPC within one year. These situations, however, would not be the equivalent of full performance within one year. Termination due to a contingency such as death of an employee and full performance are distinct situations. (*Sinclair v. Sullivan Chevrolet Co.* (1964), 45 Ill. App. 2d 10, 195 N.E.2d 250, *aff'd* (1964), 31 Ill. 2d 507, 202 N.E.2d 516.) Nothing in the record in this case suggests that the alleged oral contract could have been performed in one year. Although the court in *Martin* (109 Ill. App. 3d at 604, 440 N.E.2d at 1004-05), held that the Statute of Frauds was not a bar to an oral contract for permanent employment as "plaintiff's retirement from business pursuits or his voluntary departure from [employer/defendant] are contingencies that could have occurred within a year," leaving the contract fully performed, we disagree with that analysis. The better view holds that a contract which should have a duration of more than one year, such as a contract for permanent employment, should be in writing. *Evans v. Fluor Distribution Cos.* (7th Cir. 1986), 799 F.2d 364; *Palmateer v. International Harvester Co.* (1980), 85 Ill. App. 3d 50, 406 N.E.2d 595; *Sinclair v. Chevrolet Co.*, 45 Ill. App. 2d 10, 195 N.E.2d 250.

■ The plaintiff argues in part that his purported contract is outside the Statute of Frauds as it was partly oral and partly in writing.

The claimed writing is the collective bargaining agreement which was in effect when plaintiff accepted his first nonunion position with IPC. However, a contract which is partly oral and partly written is considered oral for its legal effect. (*Gilliland v. Allstate Insurance Co.* (1979), 69 Ill. App. 3d 630, 388 N.E.2d 68, citing *Bloomberg v. Marks* (1975), 34 Ill. App. 3d 758, 341 N.E.2d 119.) Even if the contract did not fail as an oral agreement as discussed above, the existence of the collective bargaining agreement would not support the plaintiff's claim. The collective bargaining agreement, by its own terms, expired in 1965. Thus, if plaintiff had had the same protection as union members after he became a welding training advisor, the protection would have been short-lived because he subsequently accepted further advancements in the nonunion supervisory ranks of IPC. Moreover, he does not claim that the representations allegedly made to him by Merlin Barber involved any positions other than the welding training advisor position or that he was protected under subsequent collective bargaining agreements. It is also a rule of law that a writing, to avoid the Statute of Frauds, must identify both parties. (*Davito v. Blakely* (1968), 96 Ill. App. 2d 196, 238 N.E.2d 410.) In this case, the collective bargaining agreement identifies IPC as one party. The other party was the union, representing its members. Plaintiff, in a nonunion position, was clearly not included as a member of the other party to the agreement. In addition, plaintiff did not attempt to use the procedures set forth in the collective bargaining agreement to dispute his termination. An employee may not dispute termination procedures if he or she has ignored an applicable collective bargaining agreement. *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614.

■ Plaintiff finally argues that the IPC Guidelines for Discipline created a valid contract of employment and, as support, cites *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314. In *Duldulao*, the court held that an employee handbook could serve as the basis for enforceable contract rights if the following requirements for contract formation are present:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the em-

ployee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.)

The conditions are not satisfied in this case.

The Guidelines for Discipline do not contain a clear promise which an employee could reasonably believe to be an offer. The document is no more than its title suggests: an outline to guide supervisors and management employees in disciplinary actions. In *Duldulao*, a very specific language in the policy statements persuaded the court to find a valid contract:

> "The amended handbook states that '[a]t the end of 90 calendar days since employment the employee becomes a permanent employee and termination contemplated by the hospital *cannot occur* without proper notice and investigation.' (Emphasis added.) It states that permanent employees '*are never* dismissed without prior written admonitions and/or an investigation that has been properly documented' (emphasis added), and that 'three warning notices within a twelve-month period *are required* before an employee is dismissed, except in the case of immediate dismissal.' (Emphasis added.)" (*Duldulao*, 115 Ill. 2d at 490-91, 505 N.E.2d at 318.)

The opinion continues with definitions of several terms in the handbook and some exceptions to parts of the rules. The court thus stated that the specific language in the handbook could make an employee reasonably believe that an offer had been made. No such specific language exists in the IPC handbook. The Guidelines are full of generalities, concluding with the hope that the outline will help in "rehabilitating and disciplining employees. There is no substitute for good judgment and careful analysis" of each individual situation. The general language could not be reasonably believed to be an offer.

IPC also did not disseminate the handbook in such a manner that employees would be aware of the contents and reasonably believe it to constitute an offer. The IPC document was delivered to supervisory and management employees to assist them with disciplinary procedures; the plaintiff received a copy of the Guidelines in his capacity as a supervisor. He knew that the handbook was not distributed to all employees and could not reasonably have believed it was an offer to him. The fact that the plaintiff placed the Guidelines in the General Operating Procedure Manual to which employees had access does not make the dissemination more reasonable. We agree with *Tobias v. Montgomery Ward & Co.* (Minn. App. 1985), 362 N.W.2d 380, that

more general communication is needed to serve as a basis for a reasonable belief that an offer has been made. In *Tobias*, the court discussed approvingly the distribution of guidelines in a handbook given to all employees. (*Tobias*, 362 N.W.2d at 382, citing *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622.) The court held that provisions of a personnel manual were not part of an employment contract because the relevant provisions were not in the employee handbook or "otherwise disseminated to them," although the provisions were in a manual to which the employees had access.

All three conditions in *Duldulao* must be present to create enforceable contract rights. As the first two requirements are lacking, it is irrelevant whether plaintiff remained in the employ of IPC in reliance on the Guidelines.

■ The plaintiff also appeals the denial by the trial court of two motions. The trial court rejected plaintiff's December 19, 1986, motion for leave to amend his complaint. The proposed amendment would have included a new cause of action based upon the decision in *Duldulao*. However, the contract claim based on the Guidelines for Discipline had been fully briefed and argued before the trial court on defendants' motion for summary judgment and on plaintiff's motion to vacate. The trial court considered the *Duldulao* theory in granting defendants' motion for summary judgment. Additionally, a court's denial of a motion to amend is not an error unless there is a manifest abuse of discretion; the test whether there has been abuse in allowance or denial of amendments is "whether it furthers the ends of justice." (*Lordahl v. Mauro* (1982), 109 Ill. App. 3d 478, 481, 440 N.E.2d 989, 991.) In this case, the trial court properly denied the motion to amend because the subject of the proposed amendment had been fully considered and summary judgment on the *Duldulao* issue had been granted.

■ The plaintiff also contests the trial court's denial of his August 1987 motion for leave to depose an IPC official regarding whether the Guidelines applied to managerial, as well as union, employees. However, in deciding to grant summary judgment, the trial court assumed the Guidelines applied to all employees. Taking the deposition would obviously have been futile; therefore, the trial court properly denied the motion for leave to take a deposition.

For the reasons stated above, the decision of the trial court is affirmed.

Affirmed.

STOUDER, P.J., and WOMBACHER, J., concur.