ALFRED BOLL, Plaintiff-Appellant, v. HYATT CORPORATION, d/b/a Hyatt Regency Chicago, Defendant-Appellee.

First District (4th Division) No. 1—91—4088

Opinion filed March 11, 1993.—Rehearing denied April 26, 1993.

Lonny Ben Ogus and Gary S. Wild, both of Chicago, for appellant.

Barry A. Hartstein, Barry Levenstam, and Daniel S. Goldman, all of Jenner & Block, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:
The circuit court of Cook County dismissed the complaint of plaintiff, Alfred Boll, that claimed the employee handbook given to employees of defendant, Hyatt Corporation, d/b/a Hyatt Regency Chicago, created a contractual obligation between defendant and plaintiff, although plaintiff had previously agreed to a terminable-at-will arrangement. The trial court concluded that contractual obligations between the parties did not arise from the employee handbook. Plaintiff did not appeal the dismissal and instead filed an amended complaint alleging that the supervisor's manual given to members of defendant's senior management created a contractual obligation similar to the one asserted in the initial complaint. The trial court again ruled that there was no contractual obligation created between defendant and plaintiff. The circuit court granted defendant's motion for summary judgment. Plaintiff appeals.

The sole issue of contention on appeal is whether the supervisor's manual negates defendant's terminable-at-will rule, preventing it from firing plaintiff without cause.

We affirm.

On May 19, 1988, defendant sent a letter to plaintiff offering him the managerial position of executive chef at the Hyatt Regency Chicago Hotel (hereinafter Hyatt). The letter neither specified a particular duration of employment, nor did it include methods or procedures of termination. Plaintiff accepted the offer of employment.

On June 8, 1988, plaintiff completed an employment application which included a section entitled "applicant's statement" directly above the signature line. This section contained the sentence, *"I understand that my employment is terminable-at-will, and that the*

*application is not, and is not intended to be, a contract for contin-
ued employment.''* (Emphasis added.) Plaintiff signed his name im-
mediately below these words.

On June 18, 1988, plaintiff received a copy of the employee
handbook which was disseminated to all Hyatt employees. The pur-
pose of this handbook is to provide employees with guidelines in-
tended to govern conduct on a day-to-day basis. It also describes
disciplinary procedures and explicitly states that the list of rules "is
not intended to be all-inclusive, and from time to time may be re-
vised or changed." The handbook further reiterates Hyatt's position
on contract formation. It states: *"The rules described below are not
intended to form any contract between Hyatt and its employees as
to the procedures to be followed concerning any rule violation."*
(Emphasis added.) Plaintiff, in writing, acknowledged receipt of this
handbook.

On June 23, 1988, plaintiff received a copy of the supervisor's
manual or standard operating procedures manual (hereinafter man-
ual) which is disseminated exclusively to management employees to
assist them in their supervisory duties. The manual includes the
same disclaimer language as that contained in the handbook. It also
contains a letter from the regional vice-president stating that the
manual, if used constantly, is designed to "assist and direct" em-
ployees in their jobs.

The manual also includes a two-paragraph memorandum which
provides that "no employee may be discharged without cause and
without having been properly notified in writing of improper con-
duct, poor work attitude, attendance problems, etc." Plaintiff spe-
cifically asserts that he believed this language applied to him, thus
constituting the basis of this action.

Plaintiff participated in a management training session con-
ducted by Dorothy Mrzlock, the assistant director of human re-
sources at the Hyatt. Managers and supervisors attended the ses-
sion. Mrzlock explained that the manual was a guide "on how to
deal with your own employees" and she informed the participants
that the manual was to be utilized as a "reference tool" in dealing
with employees.

Plaintiff was discharged in August 1989. He filed a complaint
on October 20, 1989, alleging that the Hyatt employee handbook
created an employment contract which provided that he could not
be terminated without cause or "sufficient progressive disciplinary
or corrective action." Hyatt filed a motion to dismiss plaintiff's
complaint contending that plaintiff was a terminable-at-will em-

ployee and the employee handbook did not affect that status. The trial court granted the motion to dismiss, applying an objective test of contractual formation, and ruled it unreasonable for plaintiff to believe that the employee handbook altered his terminable-at-will status.

Plaintiff then filed an amended complaint alleging that the manual was an offer to change his terminable-at-will status and he could therefore only be fired for "cause and only after progressive discipline." Hyatt subsequently filed a motion for summary judgment. The trial court concluded, similarly to the prior complaint, that it was unreasonable for plaintiff to believe that the manual constituted an offer to change his terminable-at-will status. The motion for summary judgment was granted.

Plaintiff appeals, arguing that a reasonable person in his position could have reasoned that the manual applied to him, altering his terminable-at-will status, and precluded Hyatt from dismissing him without cause.

■■ We disagree. We hold that no contractual obligations existed between plaintiff and Hyatt and pronounce the following. The validity of plaintiff's written acknowledgement of a terminable-at-will relationship between himself and his employer cannot subsequently be superseded by his subjective belief that a contract was implicitly created through an informational or policy manual. This written acknowledgement will be dispositive of any future allegation regarding contract formation.

■■ Although we so hold, we will address several of plaintiff's contentions which are grounded in his precarious reliance on *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482. *Duldulao* promulgated the method for determining whether enforceable contractual rights exist under circumstances involving the absence of a formal employment contract. The test provides:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional

principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490.

We commence our discussion with the evaluation of the initial prong of the *Duldulao* test. Plaintiff posits that the phrase "no employee may be discharged without cause," contained in the discipline administration section of the manual, creates a contractual relationship between himself and Hyatt. Plaintiff further argues that the head of a training session told him that the manual applied to him, reinforcing his belief that he could not be terminated without cause. It is on these two bases that plaintiff places his assertion of contract creation and a change in the at-will arrangement.

■ Unequivocally, the *Duldulao* test upon which plaintiff postulates contract existence is an objective one. Yet, plaintiff incorrectly stresses the significance of his belief that the manual applied to him. He bases this understanding on his own reading of the manual and statements made by the training session leader. However, plaintiff's subjective belief is not a consideration in the *Duldulao* analysis. The inquiry is, conversely, whether a reasonable person could have understood that a contract was formed.

The disclaimer included in the manual forecloses any reasonable belief of contract formation. "[T]his court has found the presence of disclaimers in an employee handbook or manual negates contract formation under *Duldulao*." (*Condon v. American Telephone & Telegraph Co.* (1991), 210 Ill. App. 3d 701, 707.) The manual clearly states that the rules included therein "are not intended to form any contract between the Hyatt and its employees as to the procedures to be followed concerning any rule violation." Moreover, the introduction of the manual states: "This Supervisors Guide to Personnel Procedures is designed to give you the information you need in order to establish and maintain a smooth, effective working relationship with the Human Resources Department." The above statements taken in conjunction with the training session leader's reminder that the manual is to be used strictly as a "reference tool" in dealing with employees illustrates the carefully delineated relationship between Hyatt and plaintiff.

We find that the manual did not contain a promise clear enough that a reasonable employee would believe that an offer of employment had been made. Therefore, as the first prong of the *Duldulao* test is unsatisfied, an implied contract was not established between plaintiff and Hyatt. "All three conditions in *Duldulao* must be present to create enforceable contract rights." *Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 257.

The trial court correctly found that no contract existed between plaintiff and Hyatt and properly granted Hyatt's motion for summary judgment. For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL and COUSINS, JJ., concur.