Cynthia SCHOENECK, Plaintiff,

v.

CHICAGO NATIONAL LEAGUE BALL CLUB, INC., Defendant.

No. 93 C 2963.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 29, 1994.

Jay K. Ehrlich, Jay Ehrlich & Associates, Chicago, IL, for plaintiff.

John W. Powers, Elizabeth H. Skalitzky, Seyfarth, Shaw Fairweather & Geraldson, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ZAGEL, District Judge.

The current baseball strike is only the latest in a number of indignities recently inflicted upon followers of the Chicago National League Ball Club, Inc.: the introduction of night games at Wrigley Field; the trading of Lou Brock; the departure of Cy Young winner Greg Maddux; and, as this lawsuit alleges, the elimination, in 1992, of the position of "ball person."

Cynthia Schoeneck was hired as the ball person for the Chicago Cubs' 1991 season. Dressed in a team uniform, her duties included retrieving foul balls and providing fresh baseballs to the umpire. Earning fifty dollars per game, Ms. Schoeneck missed only one of the 82 home games that year. When told that as a part-time seasonal employee she posed insurance problems which prevented her re-hiring, Ms. Schoeneck offered to buy her own insurance and sign a waiver exculpating the Cubs for any personal injury.

Ms. Schoeneck says the Cubs' decision permanently to eliminate the position of ball person the following season was the source of great personal sadness, an assertion which I find easy to believe. Her absence from Wrigley Field the following season was not, she admits, actually responsible for her subsequent separation and divorce, but it was the source of friction between her and her husband: "I didn't let go of the idea with the Cubs, and I kept bringing it up over and over again, and he got tired of hearing it. It's like, enough already. Let it go, and I couldn't."

To hold on to the job she loved, Ms. Schoeneck filed suit in federal court on three counts. She claims that the elimination of the ball person position was a pretext for unlawful gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; that the Cubs breached an

oral contract guaranteeing to her for life the job of ball person; and that she relied to her detriment on a promise of permanent employment.

■ The Chicago National League Ball Club has moved for summary judgment on all three counts. Summary judgement "shall be rendered forthwith if ... there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could not return a verdict favoring the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All inferences will be drawn in favor of the plaintiff on the respective issues. *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989).

## I.  Gender Discrimination.

■ Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff can establish a prima facie case of sex discrimination by showing that 1) she belongs to the statutorily protected class of women employees; 2) she performed her job satisfactorily; 3) she suffered an adverse employment action; and 4) she was treated less favorably than similarly situated male employees. *Hughes v. Brown,* 20 F.3d 745 (7th Cir.1994). Assuming, for the sake of argument, that Ms. Schoeneck meets the first three prongs of the test, she fails on the fourth: she cannot establish that she was treated less favorably than similarly situated male employees, for the simple reason that no males were similarly situated.

In *Washington v. Garrett,* 10 F.3d 1421 (9th Cir.1994), the plaintiff's position in the Public Affairs office of the United States Navy was eliminated during a reduction in force. The evidence established that at the time of termination no males served in that office and thus no males were potentially subject to the reduction. *Id.* at 1435. The United States Court of Appeals for the Ninth Circuit affirmed summary judgement in favor of the employer, holding that the plaintiff failed to make out a prima facie case of sex

discrimination because she could not show that, under the circumstances, men were treated more favorably than she. *Id.*

The logic of *Washington v. Garrett* applies here. This is not a case in which two ball persons, one male and one female, were previously employed and only the comparable male was rehired for the position while the plaintiff was not. Nor is it a case in which a female ball person was replaced in that job by a male. Rather, the position itself—equally open to both sexes—was eliminated. And while Ms. Schoeneck's chances for being ball person were thereby eliminated, so were those of any males who would have competed for the coveted position.

■ A defendant may rebut a prima facie case of sex discrimination by articulating at least some legitimate, nondiscriminatory reasons for its allegedly biased treatment. *Hughes,* 20 F.3d at 746–47. The defendant claims that increased concerns about field security led to an increase in security personnel. The duties of ball person, it was thought, could easily be absorbed by the enhanced security staff.

■ To prove that a more efficient allocation of human resources, not bias against women, was the basis for its decision, the Club offers uncontroverted evidence that female crowd control staff members, along with their male counterparts, eventually became responsible for those tasks formerly performed by the ball person. Since the Club has proffered a legitimate, non-discriminatory basis for its decision, Ms. Schoeneck must establish that the reason is merely pretextual. *Hughes,* 20 F.3d at 747 (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)); *Box v. A & P Tea Co.,* 772 F.2d 1372 (7th Cir.1985).

■ Ms. Schoeneck reviles the Cubs for the team's perceived incompetence, both on and off the field, from 1908 to the present. She portrays as "incredible," because supposedly so out of character, the team's concerns for the safety of fans and players. But her burden cannot be surmounted by vitriol.

■ Ms. Schoeneck attempts to prove pretext by stating that she was originally told

she lost the position for "insurance reasons." However, she heard this from someone other than the person who eliminated the position. Actions and comments by employees not responsible for the disputed decision cannot provide a basis for charging other employees with discrimination. *See Jardien v. Winston Network, Inc.*, 888 F.2d 1151 (7th Cir.1989) (citing *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 925 (7th Cir.1988)).

Also, the two explanations allegedly given for eliminating the position of ball person—insurance and security—are not mutually exclusive. They do not, as Ms. Schoeneck claims, show a dispute in the facts. Both reasons are legitimate, non-discriminatory, and, plausible. Ms. Schoeneck has not countered with any evidence showing that 1) the Club's explanation has no basis in fact; 2) the explanation was not the "real" reason; or 3) the reason stated was insufficient to warrant the discharge. *Hughes*, 20 F.3d at 747. *See also Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir.1994).

■■■■ Moreover, both men and women occupy on-field security positions. Both sexes now take turns, under a rotation schedule, retrieving foul balls and replenishing the umpire with fresh ones. Neither the circumstances nor the proffered evidence supports inferences of any particular animus towards the female sex.[1]

■■■ Ms. Schoeneck intimates that not being hired for one of the new security positions proves she was the victim of sexual discrimination. But Ms. Schoeneck did not apply for a crowd control job. Absent evidence that she had applied for such a position, which the record shows is open to any interested party, she cannot claim discrimination. *See Box*, 772 F.2d at 1376. Where an employer has a formal system of posting job openings and allowing people to apply for them, an individual who did not apply cannot establish a prima facie case of discrimination. *Id.*

■■■ In motions for summary judgment, the nonmoving party must present evidence that would support a reasonable verdict in that party's favor; a scintilla of evidence in support of the nonmovant's position will not do. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The evidence presented by Ms. Schoeneck in support of her claim barely rises to the level of "scintilla." The defendant's motion for summary judgment on this claim must therefore be granted.

## II. Breach of Oral Contract

Ms. Schoeneck testified that during the summer of 1991, while working as ball person, she broached the subject of future employment for the 1992 season by asking the Cubs' personnel director, "What about next year?" She relates that she was told "You got it," and that she could have the job for "as long as [she] wanted."

According to Ms. Schoeneck, the above conversation created a binding oral contract, the duration of which depended on how she felt. Ms. Schoeneck admits there was no specific length attached to the contract, but she figured that she could do the job "at least another ten years without a problem," depending on "how long [she] would be wanting to do something like this." Her continued ability to do all the running the job required would, she said, factor into her eventual decision to quit.

Ms. Schoeneck claims a genuine question of material fact exists as to whether or not

1. An affidavit by Ms. Schoeneck in the record, originally submitted to the EEOC, alludes to statements by certain parties that allegedly point to sexual discrimination. Putting aside any potential admissibility problems, as well as Ms. Schoeneck's cryptic denial that the signature on that affidavit is hers, the court did not consider these conversations since they were not cited to as evidence in plaintiff's briefs. The nonmovant cannot carry its evidentiary burden by asserting a fact, citing a document, and leaving the court to root out the relevant material. Local Rule 12(N) requires a roadmap of specific evidence supporting the nonmovant's position on each material factual issue on which the moving party asserts there is no dispute. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

However, even if the conversations at issue had been considered, at best they only would have shown the unsupported opinions of persons unconnected to the decision-making process behind the elimination of the ball person position.

there was a binding contract. On this point, as with her field experience, Ms. Schoeneck is off base. The alleged contract fails under any of three legal theories: indefiniteness, want of consideration, and lack of mutuality.

Under Illinois law, which governs this pendant state law claim, a valid oral contract for permanent employment must contain a clear and definite statement as to duration and be supported by sufficient consideration. *Koch v. Illinois Power Co.*, 175 Ill.App.3d 248, 124 Ill.Dec. 461, 529 N.E.2d 281 (1988). Ms. Schoeneck is unclear whether the conversation about the job referred only to 1992 or to her entire lifetime. Such great discrepancies about the term of employment precludes enforcement. As in *Koch*, the language at issue here was "so uncertain the court would have to restructure it with new, more definite language." *Id.* Courts, however, are loathe to rewrite a contract by imposing obligations where none existed. *Id.* (citing *Eisele v. Ayers*, 63 Ill. App.3d 1039, 21 Ill.Dec. 86, 381 N.E.2d 21 (1978)).

The alleged contract also fails for want of consideration. As this Court has recognized,

Illinois courts will enforce an oral promise to employ a person for life or some other equally indefinite length of time only where the employee makes in return some sacrifice—i.e., relinquishes another job and spends a considerable amount to relocate himself and his family—that he probably would not have made absent a guarantee of continued permanent employment.

*Cloud v. Northwestern Golf Co.*, No. 88 C 6254, 1992 WL 112242 (N.D.Ill. May 20, 1992).

Ms. Schoeneck offers no evidence to show that she gave up another job, relocated to take this one, or made a comparable sacrifice. The most she can assert is that she gave up the opportunity to *seek* other employment. Consideration must be made of sterner stuff. Foregoing another employment opportunity is insufficient consideration for an oral contract. *Kercher v. Forms Corp. of America, Inc.*, 258 Ill.App.3d 743, 196 Ill. Dec. 813, 816, 630 N.E.2d 978, 981 (1994)

(affirming summary judgment to an employer in a claim of breach of an oral contract for permanent employment). Since what is true for the greater must be true for the lesser, merely forgoing a chance to seek another job must likewise be deemed insufficient.

Finally, Ms. Schoeneck's alleged contract fails for lack of mutuality.

Mutuality cannot be said to exist when an employee is free to leave his/her position but claims that the employer is not equally free to dismiss him/her. It would be an anomalous situation raising serious questions of mutuality to interpret an obligation of an employer/defendant to employ an employee/plaintiff for a given period if the employee were able to quit whenever so desired.

*Koch*, 124 Ill.Dec. at 465, 529 N.E.2d at 285.

Mutuality of obligation means "either both parties are bound to the agreement or neither is bound." *Serpe v. Williams*, 776 F.Supp. 1285 (N.D.Ill.1991). Ms. Schoeneck, according to her own testimony, was free to leave her position whenever the whim struck (since the job was supposedly hers for as long as she wanted), yet she would deny the Cubs reciprocal freedom in ending the association. The common law of contracts cannot tolerate such disparate obligations on the part of the respective parties.

Since the contract fails for lack of mutuality, as it does for indefiniteness and want of consideration, the defendant is entitled to summary judgement on this breach of promise claim.

## III. Promissory Estoppel

Illinois law recognizes a narrow exception to the "at-will" employment doctrine under which a plaintiff must prove that 1) the defendant made an unambiguous promise of employment; 2) there has been reliance on the promise; 3) the reliance was expected and foreseeable; and 4) plaintiff relied on the promise to her detriment. *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1264 (7th Cir.1985); *Moore v. On–Line Software Int'l, Inc.*, No. 92 C 1562, 1993 WL 189753 (N.D.Ill. June 3, 1993).

In the instant case, Ms. Schoeneck asked a question about her future for the 1992 sea-

son. She somehow interpreted the answer as creating an oral contract of lifetime employment. Putting aside for the moment the reasonableness of such an interpretation, the evidence does not show that the alleged promise was unambiguous. The duration of the employment remains a matter of considerable speculation (as do any of the other contract terms, none of which were discussed in the conversation at issue).

Ms. Schoeneck admits in her deposition that "no specific length [of time] was attached to [the promise]." She would have me interpret that lack of specificity as evidence that the job was hers for life, but the language and circumstances cannot definitively support such a reading. The first element of the *Patkus* test thus remains unsatisfied.

Even if Ms. Schoeneck could prove that an unambiguous promise was made, that she relied on it, and that her reliance was expected and foreseeable, the doctrine of promissory estoppel requires relief be afforded only when the reliance is detrimental. *See Patkus*, 769 F.2d at 1264; *S.M. Wilson & Co. v. Prepakt Concrete Co.*, 23 Ill.App.3d 137, 318 N.E.2d 722, 724 (1974). Ms. Schoeneck offers no evidence that she relied on it to her detriment. Her third claim fails as a matter of law. The defendant, therefore, is entitled to summary judgment.

## IV. Conclusion

A fair game requires a clear set of rules, binding on all players equally, which must ultimately be construed by the appropriate authority. This is as true in federal court, where the judge rules on motions, as it is in baseball, where the umpire rules. Ms. Schoeneck has made three claims, each of which would fail before a jury as a matter of law. A federal judge knows, along with everyone else, that in baseball there is only one possible call to be rendered after three successive strikes.

Summary judgement granted.