William TOLMIE, Plaintiff–Appellant,

v.

UNITED PARCEL SERVICE, INCORPORATED, Defendant–Appellee.

No. 90–2526.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1991.

Decided April 25, 1991.

---

1. These amounts are spelled out above.

Michael J. McCarthy, McCarthy & Lammers, Davenport, Iowa, for plaintiff-appellant.

Steven H. Adelman, John A. McDonald, Keck, Mahin & Cate, Chicago, Ill., Keith J. Braskich, Keck, Mahin & Cate, Peoria, Ill., for defendant-appellee.

Before WOOD, Jr., and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

When William Tolmie first came to work for United Parcel Service ("UPS"), the terms of his employment were governed by a collective bargaining agreement that allowed dismissal only for cause. Two years later, while considering an offer of promotion to a management position, Tolmie realized that this "good cause" protection would not follow him. When he voiced this concern to his supervisor, the supervisor assured him that he would have nothing to worry about, insofar as job security was concerned, because "it is harder to fire management than other employees" of UPS. Tolmie then accepted the promotion, relying upon the assurance, and was thereafter terminated for reasons that ostensibly would not constitute good cause.

After his discharge, Tolmie brought this diversity suit and alleged that UPS had breached his employment contract by terminating him without good cause. UPS responded with a rule 12(b)(6) motion asserting that Tolmie's "contract" was too vague and indefinite, was supported by insufficient consideration, and was in violation of the Statute of Frauds. *See* ILL.REV. STAT. ch. 59, para. 1. Reading Tolmie's allegations as true and drawing all inferences in the light most favorable to him, the district court agreed with UPS and dismissed the complaint on all three grounds. We review de novo the district court's determination, applying the same standard, *Harris Trust & Sav. Bank v. E-II Holdings, Inc.*, 926 F.2d 636, 641 n. 17 (7th Cir.1991), and affirm.

Under Illinois law, which guides Tolmie's claim, employment contracts are presumed to be "at will" and are therefore terminable by either party for good reason, bad reason, or no reason at all. *See Duldulao v. Saint Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 11–12, 505 N.E.2d 314 (1987). The "at will" presumption is not unassailable, however. An employee may rebut it by a showing that the parties contracted otherwise, *id.* at 489, 106 Ill.Dec. at 12, 505 N.E.2d at 318, and Tolmie argues that his employment contract falls within that category.

Any attempt to "contract otherwise," however, was not in writing. The only evidence that Tolmie was not an at-will employee derives exclusively from the

statement by his supervisor.[1] And oral employment contracts, at least under Illinois law, are viewed with more skepticism than their formal, written counterparts. *See, e.g., Smith v. Board of Educ.,* 708 F.2d 258, 263 (7th Cir.1983).

The analytical framework is therefore familiar—offer, acceptance, and consideration—but the analysis is more scrutinizing. *See, e.g., Koch v. Illinois Power Co.,* 175 Ill.App.3d 248, 124 Ill.Dec. 461, 529 N.E.2d 281 (3d Dist.1988), *appeal denied,* 124 Ill.2d 555, 129 Ill.Dec. 150, 535 N.E.2d 915 (1989); *Martin v. Federal Life Ins. Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1st Dist.1982). In particular, not just any offer will support an oral employment contract. On the contrary, the offer must encompass terms that are "clear and definite." *Koch,* 175 Ill.App.3d at 252, 124 Ill.Dec. at 464, 529 N.E.2d at 284.

In addition to saving the judiciary from the very difficult task of reconstructing ex post facto the uncertain terms of an uncertain agreement, *see id.* at 252, 124 Ill.Dec. at 464, 529 N.E.2d at 284, the requirement of a clear and definite offer prevents employers from incurring contractual liability for informal statements that were never intended to be anything more than expressions of " 'long continuing good will and hope for eternal association.' "[2] And

as one might expect, the analysis is objective, not subjective; Illinois law seeks to determine whether the alleged promise is "clear enough that an employee would reasonably believe that an offer has been made." *Duldulao,* 115 Ill.2d at 490, 106 Ill.Dec. at 12, 505 N.E.2d at 318. This determination, moreover, need not be made by a jury. *See, e.g., id.* at 490–92, 106 Ill.Dec. at 12–13, 505 N.E.2d at 318–19; *Koch,* 175 Ill.App.3d at 252, 124 Ill.Dec. at 464, 529 N.E.2d at 284.

Applying the test articulated by the Illinois courts, we conclude that the supervisor's response cannot support Tolmie's cause of action. By his own account, Tolmie voiced a very pointed question about job security and the "good cause" provision that applied to union employees. The answer he received, however, was hardly pointed. Indeed, its general nature allows any number of interpretations,[3] only one of which would create a "good cause" provision. The statement was vague, not clear and definite, and would not cause a reasonable employee to believe that an offer had been made.[4] *See Koch,* 175 Ill. App.3d at 252, 124 Ill.Dec. at 464, 529 N.E.2d at 284; *Titchener,* 39 Ill.App.3d at 874, 350 N.E.2d at 506 (rejecting as too vague the following statement: "Your future is here ... and I hope it will be for many years to come.").[5]

---

1. Tolmie's complaint also alleged that the statements in his employee handbook constituted the basis for an implied contract. This portion of his claim was dismissed by the district court, however, and Tolmie has not pursued it on appeal.

2. *See Titchener v. Avery Coonley School,* 39 Ill. App.3d 871, 875, 350 N.E.2d 502, 507 (2d Dist. 1976) (quoting *Heuvelman v. Triplett Elec. Inst. Co.,* 23 Ill.App.2d 231, 236, 161 N.E.2d 875, 878 (1st Dist.1959)).

3. For example, the supervisor's statement could mean that higher levels of supervisors had to be involved in the decision. It could mean that UPS was reluctant to terminate upper-level employees for whom there had been a substantial investment in training. It could also be a reference to the phenomenon, although less frequent today, that layoffs are less common among management than among salaried employees.

4. Tolmie relies upon *Martin* for a great deal of his argument. *Martin* does not have any bear-

ing upon this issue, however, because that court operated from the assumption that the language of the oral agreement was clear and definite. *See Martin,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998.

5. At oral argument, Tolmie for the first time hinted that other representations had been made by the supervisor. This suggestion was not timely, however, nor is it supported by the complaint, which stated only as follows: "When [Tolmie] voiced this concern to his supervisor, he was assured orally that, if he accepted the offer into management, he would have nothing to worry about as far as job security was concerned, *because* 'it is harder to fire management than other employees' of the defendant." Amended Complaint ¶ 6 (emphasis added).

Tolmie also informs us that his complaint "specifically alleged that the effect of his supervisor's representation was to guarantee him a 'good cause' standard with respect to job security." The requirement of a clear and definite

Under one relevant line of cases, the failure to demonstrate a clear and definite offer is fatal; claims failing that prerequisite may be dismissed without further ado.[6] Under another line of authority, though, the lack of a clear and definite offer may be excused by the presence of "additional" consideration—a promise of something of value in addition to a promise to perform services.[7] The distinction is relevant to this case, however, only if Tolmie provided additional consideration, and that issue has already been resolved against him.

■ The only additional consideration argued by Tolmie was the relinquishment of his prior position with the union. *Koch*, however, expressly rejected the argument that giving up a union job in exchange for a nonunion job with the same company constituted additional consideration. *Koch*, 175 Ill.App.3d at 252–53, 124 Ill.Dec. at 464–65, 529 N.E.2d at 284–85. And the line of authority upon which *Koch* relied appears quite solid. *See Ladesic*, 140 Ill. App.3d at 491–93, 95 Ill.Dec. at 13–15, 488 N.E.2d at 1356–58; *Titchener*, 39 Ill. App.3d at 875, 350 N.E.2d at 507; *Heuvelman*, 23 Ill.App.2d at 236, 161 N.E.2d at 878.

Tolmie, in response, does not attempt to distinguish *Koch* or the line of authority upon which it relies. He merely states that those cases are wrong and argues that the correct expression of Illinois law may be found in *Martin*. *See Martin*, 109 Ill. App.3d at 602–03, 65 Ill.Dec. at 148–49, 440 N.E.2d at 1003–04. *Martin* betrays his reliance, however. Even if we assume the continued validity of the opinion,[8] it specifically rejects Tolmie's position.

In *Martin*, the court held that foregoing an offer of employment from a competing firm would constitute "additional" consideration. *Martin*, 109 Ill.App.3d at 598, 65 Ill.Dec. at 146, 148–49, 602–03, 440 N.E.2d at 1001, 1003–04. This holding is certainly more favorable to Tolmie than *Koch*, which rejected wholesale the argument that an employee could satisfy the additional consideration requirement by foregoing an employment position. 175 Ill.App.3d at 252–53, 124 Ill.Dec. at 465, 529 N.E.2d at 285. *Martin* does not go far enough, however; the court expressly qualified its holding with the warning that:

> Not every relinquishment of a job or job offer, however, will be sufficient consideration to support an alleged agreement of permanent employment. Courts have realized that a person necessarily must give up or terminate a prior job in order to accept a new one and, absent other circumstances, the relinquishment of the prior job does not render the new employment offer as anything more than a hiring for indefinite duration.

*Martin*, 109 Ill.App.3d at 603 n. 1, 65 Ill. Dec. at 149 n. 1, 440 N.E.2d at 1004 n. 1 (citing Annotation, *Validity and Duration of Contract Purporting To Be for Permanent Duration*, 60 A.L.R.3d 226, 234–35, 264–66 (1974 & Supp.1990)). Insofar as Tolmie's factual situation is concerned, *Martin* is in accord with, not contrary to, *Koch*.

Tolmie walked out of his supervisor's office with a vague and informal assurance, not an offer. And if that deficiency is not enough to merit the dismissal of his claim, he also failed to establish "addition-

---

offer cannot be satisfied, however, by merely pleading that the offer was clear and definite.

6. *See, e.g., Koch*, 175 Ill.App.3d at 252, 124 Ill. Dec. at 464, 529 N.E.2d at 284 (employee seeking to dispel presumption of at-will status must establish clear and definite offer as well as "additional" consideration); *Ladesic v. Servomation Corp.*, 140 Ill.App.3d 489, 491, 488 N.E.2d 1355, 1356, 95 Ill.Dec. 12, 13 (1st Dist. 1986) (same); *see also LaScola v. US Sprint Communications*, 739 F.Supp. 431, 436 n. 3 (N.D.Ill.1990) (same).

7. *See Martin*, 109 Ill.App.3d at 600–03, 65 Ill. Dec. at 147–49, 440 N.E.2d at 1002–04; *see also Kula v. J.K. Schofield & Co.*, 668 F.Supp. 1126, 1130–32 (N.D.Ill.1987); *Duldulao*, 115 Ill.2d at 489–90, 106 Ill.Dec. at 12, 505 N.E.2d at 318 (citing with approval *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983)).

8. *Martin* has been strongly criticized by a subsequent panel in the same district, *see Ladesic*, 140 Ill.App.3d at 491–93, 95 Ill.Dec. at 14–15, 488 N.E.2d at 1357–58, as well as an appellate panel from another district. *See Koch*, 175 Ill.App.3d at 253, 124 Ill.Dec. at 465, 529 N.E.2d at 285.

al" consideration.[9] Tolmie was an at-will employee who could be discharged for any reason, and his claim was therefore susceptible to dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure. The decision of the district court is

AFFIRMED.

---

**9.** In light of our resolution of the first two rationales offered by the district court, we do not address the issue of whether Tolmie's "con-

tract" was in compliance with the Statute of Frauds.