Clifford H. LAMASTER, Plaintiff,

v.

CHICAGO AND NORTHEAST ILLINOIS
DISTRICT COUNCIL OF CARPEN-
TERS APPRENTICE AND TRAINEE
PROGRAM, Defendants.

No. 90 C 5475.

United States District Court,
N.D. Illinois, E.D.

June 17, 1991.

Steven B. Varick, McBride, Baker & Coles, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

On September 7, 1989, plaintiff Clifford Lamaster ("Lamaster") was fired from his position as director of the Apprentice and Trainee Program by the defendant in this action, the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program ("the Program"). In a three-count complaint brought against the Program, Lamaster charges that this termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (1988) (Lamaster was sixty years old when he was fired), effected a breach of his oral contract with the Program, and transgressed Illinois law principles of promissory estoppel. Now before this court is the Program's motion to dismiss the two pendent claims. For the following reasons, that motion is denied.

## FACTS

The relevant facts are gleaned from the allegations in Lamaster's complaint, which, for the purposes of this motion to dismiss, we assume to be true. *Zinser v. Rose*, 868 F.2d 938, 939 (7th Cir.1989). Until 1987, the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program was affiliated with the Chicago Board of Education ("the Board"). Employed by the Program since 1966, Lamaster was a tenured department chairman with the Board when the Program separated from the Board in 1986. Around this time, the Program offered Lamaster a position as Director of the Program. Before he accepted this offer, Lamaster alleges, Adolf Dardar ("Dardar"), the Coordinator of the Program and an authorized agent and representative, expressly represented to Lamaster that if he accepted the position of Director, he would hold this position for as long as he chose to do so. Relying on this representation, Lamaster accepted the offer and agreed to provide the Program with his knowledge and expertise, resigned from his position with the Board and refused a substantial promotion that the Board had offered him. Without just cause, Lamaster complains, he was discharged from his position with the Program on September 7, 1989, effective October 20, 1989.

## DISCUSSION

### A. *Alleged Breach of Oral Contract for Permanent Employment*

Lamaster asserts that Dardar's promise that Lamaster would be employed by the Program for as long as he wished created an enforceable oral contract for permanent employment, which the Program breached by firing him without cause. The Program points to three defects with this alleged contract at the formation stage in urging this court to dismiss the breach-of-contract claim: a lack of a clear and definite promise; insufficient consideration; and an absence of mutuality of obligation. In addition, the Program contends that the alleged

contract is rendered unenforceable by virtue of the one-year clause of the Illinois Statute of Frauds, an argument that we reach *infra* in section C. A consideration of those contentions takes us into areas of Illinois law that have been for years and remain murky. The Illinois cases, even from the same appellate districts, cannot be reconciled in a principled manner, and differing appellate panels do not pretend that they can be. We are left, then, with the responsibility of making a best guess of what the Illinois Supreme Court would do in similar circumstances.

Illinois law presumes employment contracts to be "at will"—that is, "terminable by either party for good reason, bad reason, or no reason at all." *Tolmie v. United Parcel Service, Inc.*, 930 F.2d 579, 580 (7th Cir.1991) (citing *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 11–12, 505 N.E.2d 314, 317–18 (1987)). This general rule is interpreted as a rule of construction, however, and can be overcome by demonstrating that the parties contracted otherwise. *Duldulao*, 115 Ill.2d at 489, 106 Ill.Dec. at 12, 505 N.E.2d at 318. Illinois courts have generally imposed two requirements that a plaintiff must satisfy to overcome the presumption of at-will employment: first, the promise of permanent (or other fixed duration) employment must be clear and definite. *See Wilder v. Butler Manufacturing Co.*, 178 Ill.App.3d 819, 821, 128 Ill.Dec. 41, 42, 533 N.E.2d 1129, 1130 (3d Dist.1989); *Eastman v. Chicago, Central & Pacific Railroad Co.*, 930 F.2d 1173, 1177 (7th Cir.1991); *Simmons v. John F. Kennedy Medical Center*, 727 F.Supp. 440, 443 (N.D.Ill.1989); *Hindley v. Seltel, Inc.*, 672 F.Supp. 1093, 1095 (N.D. Ill.1987); *Yocum v. Showbiz Pizza Time, Inc.*, No. 88 C 3128, 1989 WL 15961 at 1 (N.D.Ill. Feb. 21, 1989). This factor is evaluated by an objective inquiry, *see Tolmie*, 930 F.2d at 501, and will be satisfied "only if the 'language contains a promise clear enough that an employee would reasonably believe that an offer has been made.' " *Hindley*, 672 F.Supp. at 1095 (quoting *Duldulau*, 115 Ill.2d 482, 106 Ill.Dec. at 12, 505 N.E.2d at 318). Second, the plaintiff must

establish that the contract is supported by valid consideration. *See Ladesic v. Servomation Corp.*, 140 Ill.App.3d 489, 491, 95 Ill.Dec. 12, 13, 488 N.E.2d 1355, 1356 (1st Dist.1986); *Hindley*, 672 F.Supp. at 1095; *Wilcox v. Alamo Group, Inc.*, No. 85 C 4595, 1986 WL 15136 at 5 (N.D.Ill.1986).

### 1. *"Additional Consideration" Requirement*

The consideration requirement, most courts agree, is not fulfilled by a promise on the part of the plaintiff-employee to perform the services required by the employment. *See Heuvelman v. Triplett Electrical Instrument Co.*, 23 Ill.App.2d 231, 235, 161 N.E.2d 875, 877 (1st Dist. 1959); *Smith v. Board of Education*, 708 F.2d 258, 263 (7th Cir.1983); *Bordenkircher v. Burlington Air Express*, No. 87 C 3897, 1989 WL 84998 (N.D.Ill. July 19, 1989); *Wilcox*, 1986 WL 15136 at 5. This practice of requiring "additional consideration," however, has been the subject of some dispute in recent years. Relying on a decision of the First Illinois Appellate District, *Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1st Dist.1982), this court held in *Kula v. J.K. Schofield & Co.*, 668 F.Supp. 1126 (N.D.Ill.1987), that as long as the parties bargained for and exchanged promises for permanent employment, no additional consideration would be necessary. 668 F.Supp. at 1131–32. Additional consideration, such as evidence that the parties agreed, as part of their bargain, that the plaintiff would leave his job and the benefits that went with it, we held, would be useful in determining the parties' intent but not necessary if the intent to enter into a permanent employment contract is clear from other evidence. 668 F.Supp. at 1132. Other Illinois courts, while not following *Martin*'s holding, have similarly interpreted that case as dispensing with the requirement of consideration in addition to the basic promise to perform services if the parties' intent is manifest. *See Tolmie*, 930 F.2d at 582 & n. 7; *Thompson v. American Geriatrics Society, Inc.*, 83 C

3370, 1986 WL 11363 at 2 (N.D.Ill. Oct. 6 1986); *Wilcox*, 1986 WL 15136 at 5.

This understanding perhaps misinterprets the *Martin* decision. The court in that case addressed itself primarily to reexamining the proposition that forgoing alternative offers of employment does not constitute sufficient consideration. Rejecting that proposition, the *Martin* court held that if the parties bargained for and exchanged promises to employ permanently on one hand and to forgo alternative employment opportunities on the other, the consideration element would be satisfied. 109 Ill. App.3d at 601, 65 Ill.Dec. at 148–149, 440 N.E.2d at 1002–1003. Additional consideration, the *Martin* court held, is unnecessary; the court appears to interpret "additional consideration," however, to signify consideration in addition to the promise to forgo other offers of employment rather than in addition to the mere promise to provide services. In *Kula*, by contrast, we understood the additional consideration concept to include the relinquishment of the right to accept competing offers of employment. Although the *Martin* court cites, without apparent disapproval, decisions of other jurisdictions that have enforced contracts for permanent employment " 'even though the only consideration for it [the contract], so far as the employer is concerned, is the promise of the employee to render the service called for by the contract,' " *Martin*, 109 Ill.App.3d at 602, 65 Ill.Dec. at 148, 440 N.E.2d at 1003 (quoting *Eggers v. Armour & Co.*, 129 F.2d 729, 731 (8th Cir.1942)), the court's reasoning and conclusion do not seem fully to endorse that approach. The court stresses elsewhere in the opinion that no additional consideration would be necessary if the parties exchanged bargained-for promises and observes that "consideration is an essential element for the creation of an enforceable contract," 109 Ill.App.3d at 603, 65 Ill.Dec. at 149, 440 N.E.2d at 1004; the consideration in that case was found in the plaintiff's promise not to accept an attractive job offer with a competing company. Without the commitment to forgo that offer, the promise on the part of the defendant to employ the plaintiff permanently would not be bargained for and would not constitute consideration, for a promise simply to perform services is illusory where the plaintiff is free to leave the defendant's employ whenever he chooses. *See* Annotation, *Validity and Duration of Contract Purporting to be for Permanent Employment*, 60 A.L.R.3d 226, 233 (1974 & Supp.1990). Indeed, the *Martin* court suggests, when addressing the defendant's argument that the contract in that case was unenforceable under the mutuality of obligation doctrine, that if the contract were not supported by consideration in the form of the plaintiff relinquishing his right to accept the competing job offer, the remaining promise—to perform services—would be illusory in light of the plaintiff's ability to terminate the employment relationship at any time and would not support the contract. *See Martin*, 109 Ill.App.3d at 603–04, 65 Ill.Dec. at 149, 440 N.E.2d at 1004.

The *Martin* decision, then, can be read broadly as requiring nothing more than a promise to perform where the parties' intent is clear, or more restrictively as dispensing with the "additional consideration" requirement only when the contract is otherwise supported by a non-illusory promise. This latter interpretation of Illinois law is admittedly narrower than we espoused in *Kula* but appears to reflect more accurately the actual holding of *Martin*, to account for the fierce criticism that *Martin*, broadly construed, has attracted, *see, e.g., Ladesic*, 140 Ill.App.3d at 492, 95 Ill.Dec. at 14, 488 N.E.2d at 1357, and to incorporate more faithfully the reasoning of the latest opinion of the Illinois Supreme Court's in this area. The issue presented in that case, *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), was whether and under what conditions an employee handbook distributed by an employer could become a binding contractual agreement. Holding that such handbooks could, in some circumstances, rise to the level of contract, the court embraced the "traditional requirements for contract formation"— offer, acceptance, and consideration—to determine whether a contract was created.

115 Ill.2d at 482, 106 Ill.Dec. at 12, 505 N.E.2d at 318. The court thereby reaffirmed the importance of the traditional consideration concept when a plaintiff is urging an interpretation of an employment relationship that deviates from the presumed "at will" paradigm. An illusory promise, which imposes no obligation on the promisor, cannot constitute consideration, *see Martin,* 109 Ill.App.3d at 603, 65 Ill.Dec. at 149, 440 N.E.2d at 1004 (" 'Where there is no other consideration for a contract the mutual promises of the parties constitute the consideration, and these promises must be binding on both parties.' " (quoting *Armstrong Paint and Varnish Works v. Continental Can Co.,* 301 Ill. 102, 108, 133 N.E. 711 (1921))); *Buian v. J.L. Jacobs and Co.,* 428 F.2d 531, 533 (7th Cir.1970), and therefore a plaintiff's promise to work for an employer as long as the plaintiff desires cannot alone support a contract under *Duldulau.*[1] Where the plaintiff's right to terminate the employment relationship is somehow fettered, however, the promise to work can constitute consideration. *See Barry Gilberg, Ltd. v. Craftex Corp.,* 665 F.Supp. 585, 594 (N.D.Ill.1987).

■ Following *Martin,* and with reference to *Duldulao,* then, we hold that a mere promise to perform the services of employment alone cannot support a contract for permanent employment. The promises must be bargained for and must be binding for the contract to be enforceable; once the parties have exchanged bargained-for, non-illusory promises, the consideration requirement is satisfied. Leaving aside the question of what constitutes bargained-for, non-illusory promises for the moment, we think no court would quibble with the proposition that additional consideration may be useful in demonstrating the intent of the parties. Such a construction would not lead to the abolishment of the

consideration requirement, *cf. Ladesic,* 140 Ill.App.3d at 492–93, 95 Ill.Dec. at 14, 488 N.E.2d at 1357, because underlying consideration will still be required. We need not decide whether the Illinois Supreme Court would allow the presence of such evidence to obviate the need for a clear and definite promise, for, as discussed *infra,* we find the promise in this case to be sufficiently certain to satisfy the "clear and definite" requirement for the purpose of this motion.

### 2. Forgoing Alternative Employment as Consideration

■ In *Heuvelman v. Triplett Electrical Instrument Co.,* 23 Ill.App.2d 231, 161 N.E.2d 875 (1st Dist.1959), the plaintiff was offered a position with a competitor of the defendant-employer. After the plaintiff discussed the matter of his leaving with the defendant, the president of the defendant company told the plaintiff "that their arrangement was a permanent one." 23 Ill.App.2d at 235, 161 N.E.2d at 877. Finding the alleged permanent employment contract to fail for, among other deficiencies, lack of consideration, the court held that "[i]t is not sufficient consideration for a contract of permanent employment to forego another employment opportunity." 23 Ill.App.2d at 236, 161 N.E.2d at 878 (citations omitted). The *Martin* court reexamined and rejected this categorical statement, reasoning that "[t]he essential element of consideration is a bargained-for exchange of promises or performances," and a promise "to relinquish a more lucrative offer with another employer in exchange for job security with his current one," if bargained for and given in exchange for the employer's promise, would appear to satisfy the consideration requirement as properly understood. 109 Ill.

---

1. In *Duldulao,* the court found the necessary acceptance and consideration in the plaintiff's performance. But the purported contract there was interpreted as a unilateral one—that is, a promise by one party that seeks performance, rather than a return promise, by the other. The contract is not fully formed until the performance actually begins, and therefore the consideration (performance) is binding where the prom-

ise to perform in a bilateral contract would not be. There is no allegation or indication that the alleged contract at issue in this case (or in *Martin* or *Kula* ) was unilateral; indeed, Lamaster, in the complaint, represents his consideration as a promise to accept the position offered and provide his knowledge and expertise (Complaint, Count III, ¶ 6).

App.3d at 601, 65 Ill.Dec. at 147–148, 440 N.E.2d at 1002–1003.

*Martin*'s holding has been strongly criticized by subsequent Illinois appellate court decisions. In *Ladesic v. Servomation Corp.*, 140 Ill.App.3d 489, 95 Ill.Dec. 12, 488 N.E.2d 1355 (1st Dist.1986), the court found faulty *Martin*'s reasoning, asserting that a plaintiff, under *Martin*, could enter into an enforceable contract without surrendering anything of value. Forgoing an alternative offer of employment, the *Ladesic* court continued, is not tantamount to "rejecting a more lucrative position," for the plaintiff "is merely comparing the benefits of one position with another, since any employee accepting one job offer necessarily rejects others." 140 Ill.App.3d at 492, 95 Ill.Dec. at 14, 488 N.E.2d at 1357 (citations omitted). Two years later, a panel from a different appellate district embraced *Ladesic*'s critique of *Martin*, finding that the plaintiff in that case, a former union worker who was allegedly promised that he would retain protection against job termination if he accepted a non-union position, did not give up anything of value but rather "simply examined the union and non-union jobs and elected to accept the non-union" position. *Koch v. Illinois Power Co.*, 175 Ill.App.3d 248, 253, 124 Ill.Dec. 461, 465, 529 N.E.2d 281, 285 (3d Dist. 1988), *leave to appeal denied*, 124 Ill.2d 555, 129 Ill.Dec. 150, 535 N.E.2d 915 (1989). *See also Tolmie*, 930 F.2d at 582 & n. 8.

This court's survey of Illinois precedent, combined with our understanding of the consideration doctrine, however, leads us to conclude that the *Martin* approach is well supported in law and theory. To be sure, courts agree with near unanimity that merely waiving the right to pursue or accept alternative employment opportunities does not constitute sufficient consideration, *see Tolmie*, 930 F.2d at 582; *Smith*, 708 F.2d at 263–64; *Bordenkircher v. Burlington Air Express*, No. 87 C 3897, 1989 WL 84998 at 2 (N.D.Ill. July 20, 1989); *Thompson*, 1986 WL 11363 at 2, for

> any person who is changing jobs has to relinquish prior employment to place himself in a position to accept his new employment, and ... therefore the person who relinquishes employment to accept a "permanent" or "lifetime" position is not doing anything more than he would do to accept an indefinite hiring.

Annotation, *supra* p. 6, at 234–35. But *Martin* both recognizes and incorporates this basic principle in its holding, observing that "[n]ot every relinquishment of a job or job offer ... will be sufficient consideration to support an alleged agreement of permanent employment." *Martin*, 109 Ill. App.3d at 603 n. 1, 65 Ill.Dec. at 149 n. 1, 440 N.E.2d at 1004 n. 1. Absent special circumstances, the court acknowledged, the mere relinquishment of a prior job, which must be given up in order to accept the new offer, will not support anything more than an employment-at-will relationship. *Id.*

*Martin*'s bolder pronouncement—that in some cases forgoing alternative employment *can* rise to the level of valid consideration—is similarly supported by Illinois caselaw. In *Titchener v. Avery Coonley School*, 39 Ill.App.3d 871, 350 N.E.2d 502 (2d Dist.1976), on which both *Ladesic* and *Koch* rely in criticizing *Martin* as departing from Illinois precedent, the court found a lack of "special bargained for detriment" on the part of the plaintiff, a schoolteacher who left a tenured position in another district to work for the defendant. Significantly, however, the plaintiff in *Titchener* herself initiated contact with the defendant, leading the court to observe that the plaintiff "sought the employment and there are no statements in the affidavits to show that [defendant] importuned [plaintiff] to leave her tenured position in the LaGrange School system." 39 Ill.App.3d at 875, 350 N.E.2d at 507. The obvious implication of this statement is that in cases where the plaintiff was lured away from another job with a promise of permanent employment, sufficient consideration may be found.

Indeed, a contract for permanent employment was upheld in a 1945 Illinois decision in which the plaintiff was asked to abandon his New York law practice and move himself and his family to Chicago to work for the defendant. Only after advising the defendant that he would take the job and

move his family to Chicago provided that he could rely on the defendant's promise of permanent employment did the plaintiff accept the position. *Molitor v. Chicago Title & Trust Co.*, 325 Ill.App. 124, 59 N.E.2d 695 (1st Dist.1945). The *Molitor* decision has been cited with approval in several subsequent opinions. *See Titchener*, 39 Ill. App.3d at 875, 350 N.E.2d at 507; *Heuvelman*, 23 Ill.App.2d at 235, 161 N.E.2d at 877.

The key element in *Molitor* that persuaded that court to uphold the contract, we believe, was not the monetary sacrifice that attended the change in employment in that case but rather the fact that the promise to leave the prior position was bargained for—that the plaintiff agreed to relinquish his previous position on the condition that his new job be permanent. The rationale behind the general rule that forgoing alternative employment does not constitute consideration, we repeat, is that any new position (assuming that it is full-time) requires such a sacrifice, regardless of whether it is at-will or for life. Similarly, any position in Chicago offered to a New Yorker would require the employee to pack up and move, regardless of the duration of the Chicago post. What sets *Molitor* apart is that the plaintiff expressly gave up his old position and moved to Chicago *in exchange for* a promise of permanence. That element of bargained-for exchange is the essence of consideration. *See Hartbarger v. SCA Services, Inc.*, 200 Ill.App.3d 1000, 1012, 146 Ill.Dec. 633, 641, 558 N.E.2d 596, 604 (5th Dist.), *leave to appeal denied*, 135 Ill.2d 556, 151 Ill.Dec. 382, 564 N.E.2d 837 (1990); Restatement (Second) of Contracts § 71 (1979) ("To constitute consideration, a performance or a return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."); E. Farnsworth, *Contracts* 41–42.

It in no way compromises the logic behind the *Molitor* opinion, then, to find consideration even in the absence of significant moving expenses where a promise of permanent employment is sought and given in exchange for a promise to relinquish a former job or decline a competing offer. *Ladesic*'s chief criticism of the *Martin* holding—that "the employee is not rejecting a more lucrative position" but rather is "merely comparing the benefits of one position with another"—misunderstands the substance of the consideration that *Martin* finds sufficient. True it may be that the old job is not more lucrative, at least in a subjective sense, than the new, unless we are willing to assume that the plaintiff is not economically rational. But the comparative value of the two jobs is not relevant; as long as the old position has some value, and as long as the plaintiff relinquishes that job in exchange for a promise of permanent employment, the consideration requirement is satisfied.

### 3. *Application of These Principles to Lamaster's Allegations*

#### a. *Clear and Definite Promise*

■ We begin by noting that before us is a motion to dismiss, not a motion for summary judgment or for a directed verdict. The concept of notice pleading, however, has to take into account the somewhat subtle distinctions separating valid from invalid claims, and a plaintiff has to allege with sufficient specificity to indicate that he will be entitled to relief if he prevails. *See Smith*, 708 F.2d at 263–64.

In Count III of the complaint, Lamaster alleges that "Plaintiff and Defendant, by its authorized agents and representatives, entered into an oral contract ... pursuant to which Defendant agreed to employ Plaintiff's salary and benefits for as long as Plaintiff wanted to hold this position...." (Complaint Count III, ¶ 6). And in Count II,[2] Lamaster elaborates on the circumstances surrounding the alleged promise of full employment:

**2.** Although Lamaster did not incorporate his Count II allegations in Count III, we will consider, in the name of judicial efficiency, the allegations relating to the circumstances of the prom-ise of permanent employment with respect to both Lamaster's promissory estoppel and his breach of oral contract claims.

At and prior to the time Defendant offered Plaintiff the position of Director of the Program, the Coordinator of the program, Adolph Dardar, in his capacity as Defendant's authorized agent and representative, expressly represented to and promised Plaintiff that if Plaintiff accepted the position of Director, Plaintiff would hold this position for as long as Plaintiff chose to do so.

(Complaint Count II, ¶ 13).

Lamaster is clearly not asserting a promise that must be inferred from circumstances and indirect evidence. *Cf. Simmons*, 727 F.Supp. at 443 (promise found to be neither clear nor definite where it had to be inferred from the fact that plaintiff was offered an annual salary and tuition reimbursement for a two-year MBA program); *Mann v. Ben Tire Distributors, Ltd.*, 89 Ill.App.3d 695, 44 Ill.Dec. 869, 411 N.E.2d 1235 (4th Dist.1980) (hiring at an annual salary does not create a clear and definite promise to employ plaintiff for a fixed duration); *Hindley*, 672 F.Supp. 1093 (annual salary and performance commission and vacation pay provisions); *Lukasik v. Riddell, Inc.*, 116 Ill.App.3d 339, 72 Ill.Dec. 123, 452 N.E.2d 55 (1st Dist.1983) (provisions establishing retirement conditions and benefits); *Roiter v. SNE Corp.*, No. 85 C 3453, 1986 WL 11014 (N.D.Ill. Sept. 25, 1986) (annual salary and review). Nor was the promise, on its face, ambiguous, yielding many possible interpretations and rendering the promise of permanence inherently suspect. *Cf. Tolmie*, 930 F.2d at 581. Rather, the alleged promise here is explicit and direct. Although even direct "promises" of full employment have been found insufficient where they merely reflect "long continuing good will and hopes for eternal association," *Heuvelman*, 23 Ill.App.2d at 236, 161 N.E.2d at 878; *see also Eastman*, 930 F.2d at 1177; *Wilcox*, 1986 WL 15136 at 5, Lamaster has represented that the alleged promise in this case was a *formal* one, made by an authorized agent of the Program during the course of negotiations with Lamaster regarding the offered position. *Cf. Heuvelman*, 23 Ill.App.2d at 236, 161 N.E.2d at 878 ("The words and the manner of their utterance should not be of

that informal character which expresses only long continuing good will and hopes for eternal association."); *Titchener*, 39 Ill. App.3d at 875, 350 N.E.2d at 507; *Wilcox*, 1986 WL 15136 at 5; *Bordenkircher*, 1989 WL 84998 at 3 (comments made to the plaintiff and other workers in an informal setting while working on the docks held insufficient to create a contract for permanent employment); *Mursch v. Van Dorn Co.*, 851 F.2d 990, 998 (7th Cir.1988) ("informal, casual, and off-the-cuff" remarks insufficient; Wisconsin law applied). Indeed, the Second Circuit, applying standards that appear similar to Illinois law, affirmed a jury verdict in favor of the plaintiff where the plaintiff was told, "in an atmosphere ... of critical one-on-one negotiation regarding the terms of future employment," that "'there [wa]s no way [he was] going to get fired'" or "'hurt ... in this company.'" *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 109, 104 (2d Cir.1985). Illinois courts have exhibited a certain degree of strictness when applying the clear and definite standard, *see, e.g., Wilder*, 178 Ill.App.3d 819, 128 Ill.Dec. 41, 533 N.E.2d 1129, but we think that the alleged promise in this case, in light of the language used and the context in which it was made, was sufficiently clear and definite to sustain Lamaster's oral contract claim at the dismissal level. *See Kula*, 668 F.Supp. at 1132–33.

### b. *Adequate Consideration*

In his memorandum in opposition to the Program's motion to dismiss, Lamaster asserts two sources of consideration that support the alleged oral contract for permanent employment. First, Lamaster argues that his promise to "provide Defendant with his knowledge and expertise" (Plaintiff's Response at 14) constitutes a legal detriment that rises to the level of sufficient consideration. But every promise to perform services implies a promise to draw on and invoke one's knowledge and expertise when carrying out one's duties on the job; this promise, then, is infected with the illusoriness of the underlying promise to perform the services required by the position.

More promising is Lamaster's argument that valid consideration can be found in his "giving up his employment with the Chicago school district and agreeing to accept the position of Director" (Plaintiff's Response at 14). The complaint, however, does not suggest that this promise on the part of Lamaster to relinquish his past employment was part of the bargain struck by the parties; Lamaster describes the terms of the oral contract as an agreement by the Program "to employ Plaintiff as Director of the Program and to pay Plaintiff's salary and benefits for as long as Plaintiff wanted to hold this position" and by Lamaster "to accept this position and to provide Defendant with his knowledge and expertise" (Complaint Count III, ¶ 6). The complaint, then, does not seem adequately to allege that Lamaster abandoned his previous employment "in exchange for and in reliance upon the employer's promise of permanent employment." *See Martin,* 109 Ill.App.3d at 603, 65 Ill.Dec. at 149, 440 N.E.2d at 1004; *Thompson,* 1986 WL 11363 at 2. In Count II, in which Lamaster asserts a promissory estoppel claim, he does allege that he resigned from his old position "[i]n reliance upon th[e] representation and promise made" by the Program (Complaint Count II, ¶ 15), but nowhere is the element of bargain or exchange adverted to—nowhere does Lamaster assert that the Program *sought* Lamaster's relinquishment of his old job in exchange for the promise of permanence. Although we find the complaint deficient, the arguments in Lamaster's memorandum that he was lured away from an existing job in order to accept the new offer (Plaintiff's response at 15) and that the "promise of permanent employment was specifically intended to induce [him] to forego" his prior position (*id.* at 11) contain the kernel of a claim that the promise of permanent employment was indeed bargained for, and therefore we dismiss Count III but grant Lamaster the opportunity to amend his complaint to include an allegation of valid consideration supporting the alleged oral contract.

### B. *Promissory Estoppel*

In Count II, Lamaster asserts that he is entitled to monetary damages and reinstatement under a promissory estoppel theory. Illinois recognizes the doctrine of promissory estoppel and will sustain a claim based on this theory if four elements are present:

> First, the plaintiff must allege an unambiguous promise. Second, there must have been reliance on this promise. Third, the reliance must have been expected and foreseeable. Finally, there must be some injury resulting form the reliance.

*Simmons,* 727 F.Supp. at 443 (citing *Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251, 1264 (7th Cir.1985)); *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 309–10, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990) *Illinois Valley Asphalt, Inc. v. J.F. Edwards Construction Co.,* 90 Ill.App.3d 768, 770, 45 Ill.Dec. 876, 878, 413 N.E.2d 209, 211 (3d Dist.1980). The promissory estoppel doctrine is generally invoked in situations in which the plaintiff is unable to prove the existence of an actual contract. This court has in the past expressed some hesitation regarding the applicability of the promissory estoppel theory in the employment contract context, *see Massouras v. Litton Industrial Products, Inc.,* No. 84 C 2618, 1985 WL 9361 at 2 (N.D.Ill. Feb. 4, 1985), for a permissive view of that doctrine would likely undermine the presumption of employment at will, to which Illinois courts have historically adhered. Our doubts have recently been echoed in the Seventh Circuit. *See Goldstick,* 788 F.2d at 465. But because the Program had not raised this argument, we will proceed to consider the merits of the promissory estoppel claim. If this case ultimately goes to trial, moreover, it would perhaps be best to tackle the difficult question of where the Illinois Supreme Court would likely stand on this issue after the jury has resolved the contract claim.

The Program attacks Lamaster's promissory estoppel claim initially on the grounds that the promise to Lamaster was not unambiguous. Whether a promise that is "clear and definite" for contract formation

purposes is necessarily "unambiguous" for promissory estoppel purposes does not appear ever to have been squarely addressed, although there is some indication that a promise that fails the clear-and-definite test will not support a promissory estoppel claim, *see Simmons*, 727 F.Supp. at 443–44; *Phillips v. Britton*, 162 Ill.App.3d 774, 785–86, 114 Ill.Dec. 537, 545, 516 N.E.2d 692, 700 (5th Dist.1987). The promise in this case, however, was sufficiently straightforward and explicit to satisfy the requirement of unambiguity at this juncture. Any suggestion that Dardar's representation was a statement of good will rather than an actual promise is properly considered at the summary judgment stage, and we question whether even then such evidence would render the promise ambiguous or whether it would merely render unreasonable Lamaster's reliance on the promise.

■ Recasting its argument that the oral contract alleged in Count III lacks sufficient consideration, the Program asserts with respect to the promissory estoppel claim that detrimental reliance cannot be found in Lamaster's relinquishment of his job with the Chicago Board of Education. The concept of detrimental reliance, however, while similar in some respects, is not coextensive with the concept of consideration. As long as the promisor's representation induces some action or forbearance on the part of the promisee that would not have otherwise occurred, the reliance element is satisfied. *See* Restatement (Second) of Contracts § 90 (1979) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promissee or third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). Here, Lamaster has alleged that "[i]n reliance upon this representation and promise ..., [he] resigned from his employment as a tenured department chairman with the Chicago Board of Education and refused a substantial promotion which had been offered to him by the Chicago Board of Education in order to accept the position of Director of the Program" (Complaint

¶ 15). Lamaster specifically asserts, then, that the promise of permanence (and not merely the prospect of employment with the Program) induced his relinquishment of his old position; this allegation appears to fall comfortably within the confines of the detrimental reliance concept.

■ Whether Lamaster has adequately alleged that his reliance on the asserted promise was expected and foreseeable is something the Program also contests, arguing first that Lamaster has failed to allege this element altogether. Contrary to the Program's argument, however, the complaint asserts quite clearly that the Program "made th[e] representation and promise ... to induce Plaintiff to accept Defendant's offer of employment and Plaintiff's reliance upon this representation and promise was expected and foreseeable by Defendant" (Complaint Count II ¶ 14). The issue of foreseeability of reliance is a question of fact. *See Quake Construction*, 141 Ill.2d at 310, 152 Ill.Dec. at 323, 565 N.E.2d at 1005; *Illinois Valley*, 90 Ill.App.3d at 770, 45 Ill.Dec. at 878, 413 N.E.2d at 211. Clearly the reliance in this case, which took the form primarily of relinquishing an existing position, must have been foreseeable to the Program, which offered Lamaster a mutually exclusive position. Whether it was foreseeable that the alleged promise (as opposed to the mere offer of a position) would induce the reliance is less clear and depends largely on the nature and context of the promise; this issue, however, is not appropriate for disposition at the dismissal stage, for the allegations of the complaint do not exclude the possibility that Lamaster can prove a set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## C. *Statute of Frauds*

■ Even assuming that an oral contract was properly formed or that all of the elements of promissory estoppel are present, the Program argues, the promise of permanent employment in this case is not enforceable under the one-year provi-

sion of the Illinois Statute of Frauds, Ill. Rev.Stat. ch. 59, sec. 1 (1989) ("the Statute"), which directs that "[n]o action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing...."

There is no dispute that the alleged agreement of permanent employment was not memorialized by a writing; instead, Lamaster disputes the applicability of the Statute of Frauds by arguing that the agreement was capable of full performance within one year as that concept is understood by Illinois courts. If Lamaster can allege a valid contract claim with bargained-for exchange, we agree that it would not fall within the parameters of the statute.

Although the Statute speaks in actual terms, requiring a writing for any agreement "that is not to be performed within" one year, it has been interpreted by Illinois courts on a more hypothetical level so that any agreement that is *capable* of being performed within a year, whether or not that contingency is likely, falls outside the Statute's reach. *See Sinclair v. Sullivan Chevrolet Co.*, 45 Ill.App.2d 10, 14, 195 N.E.2d 250, 252 (3d Dist.) (*"Sinclair I"*), *aff'd*, 31 Ill.2d 507, 202 N.E.2d 516 (1964) (a contract is unenforceable under the Statute " 'only if it is impossible of performance within one year' " (quoting *Balstad v. Solem Machine Co.*, 26 Ill.App.2d 419, 168 N.E.2d 732 (1960))); *Evans v. Fluor Distribution Cos.*, 799 F.2d 364, 366 (7th Cir. 1986); *Goldstick v. ICM Realty*, 788 F.2d 456, 464 (7th Cir.1986). There is some disagreement among Illinois appellate courts (the Illinois Supreme Court has been silent on this issue) over whether a contract for permanent or lifetime employment is capable of performance in one year. On one hand, the death or voluntary resignation of the employee may be understood as fulfilling the terms of the agreement and rendering it fully performed. A competing interpretation, however, construes those events as *terminating* the agreement, cutting short the contemplated life of the employment relationship. A review of the caselaw in this area convinces this court that the former interpretation more properly addresses the specific agreement in this case.

The only Illinois Supreme Court case dealing with the one-year provision in the context of employment contracts presents the most easily resolved scenario and the least controversial result. The contract at issue in that case, *Sinclair v. Sullivan Chevrolet Co.*, 31 Ill.2d 507, 202 N.E.2d 516 (1964) (*"Sinclair II"*), was an oral agreement that the plaintiff would work for the defendant for a period of one year to begin about a week after the parties entered into the contract. Unlike the contracts of indefinite duration in the permanent employment cases, the agreement in *Sinclair* was for a specified duration, and the parties anticipated that it would last that long. The *Sinclair* plaintiff, moreover, was not free to leave the defendant's employ any time he chose. The court had little trouble holding that the contract was unenforceable under the Statute of Frauds. The lower court's opinion offers insight into the reasoning behind this holding. Although the death of the employee would terminate the agreement (as is true in every employment contract), the appellate court held, termination and performance are not synonymous; that continued performance may be excused and that the employer may not have any remedies to pursue "does not mean the contract has been performed in full." *Sinclair I*, 45 Ill.App.2d at 15, 195 N.E.2d at 252. *See also Goldstick*, 788 F.2d at 464 ("A promise to work for an employer for five years[ ] really cannot be performed within a year."); E. Farnsworth, *supra* p. 13, at 395.

Application of the Statute of Fraud's one-year provision becomes trickier as we leave the narrow and rather unambiguous confines of *Sinclair* and consider the provision with respect to contracts for an indefinite duration. It is generally agreed that contracts to employ individuals until the age of 65 or until retirement are covered by the Statute. Thus in *Evans*, the Seventh Circuit held that a contract to employ

a 62–year old plaintiff until he was 65 was not capable of being fully performed within one year and therefore violated the Statute of Frauds. 799 F.2d at 366. *See also Brudnicki v. General Electric Co.,* 535 F.Supp. 84, 86–87 (N.D.Ill.1982) (contract for employment that "would extend over 24 years until plaintiff retired at age 65" found void under the Statute of Frauds); *Palmateer v. International Harvester Co.,* 85 Ill.App.3d 50, 52, 40 Ill.Dec. 589, 591, 406 N.E.2d 595, 597 (3d Dist.1980), *aff'd in part, rev'd in part on other grounds,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) (agreement to employ plaintiff until his retirement found unenforceable under the Statute of Frauds); *cf. Hodge v. Evans Financial Corp.,* 823 F.2d 559, 563 (D.C.Cir.1987). In these cases, the agreement of employment is intended to run for a certain period of years, and any contingency that terminates the agreement cuts that contemplated period short, preventing full performance. Although this approach appears to be fairly unanimously adopted by Illinois courts, we note that it is not compelled by the *Sinclair* decision. The plaintiffs in these cases can generally leave the defendant's employ at any time, and just as at-will employment relationships do not trigger the one-year provision, the plaintiff's relinquishment of his job in these cases arguably effects full performance and falls outside the reach of the Statute. *See Balstad v. Solem Machine Co.,* 26 Ill.App.2d 419, 422, 168 N.E.2d 732, 734 (2d Dist.1960). But it is significant that the agreement establishes a contemplated term, and the plaintiff's departure would cut that term short, thereby frustrating the intent of the contract. *Cf.* Restatement (Second) of Contracts § 130 comment b, illustration 6 (1979).

Less unanimous has been the treatment of contracts for permanent employment under the one-year provision of the Statute of Frauds. The majority of courts understand these contracts as contemplating a specified term, differing little from agreements to employ the plaintiff until his retirement. Death or the departure of the plaintiff therefore is seen as frustrating the terms of the contract. *See Koch,* 175 Ill.App.3d at 254, 124 Ill.Dec. at 466, 529 N.E.2d at 286; *Bordenkircher,* 1989 WL 84998 at 3. One Illinois appellate panel, however, understanding a contract to employ the plaintiff until retirement as a lifetime employment contract, found the contract to fall outside the purview of the Statute, *see Martin,* 109 Ill.App.3d at 604, 65 Ill.Dec. at 150, 440 N.E.2d at 1005, an approach espoused in other jurisdictions as well. *See Hodge,* 823 F.2d at 563 (recognizing a distinction between employment contracts for a specified period of time, such as contracts until the age of 65, and contracts for permanent employment; death would effect full performance with respect to the latter type of agreement); *see also* A. Corbin, *Contracts* § 446, at 549 (1950 & Supp.1991). These courts apparently interpret permanent employment contracts as agreements to employ the plaintiff until his death; death, therefore, renders the contract fully performed. *Cf. Sinclair I,* 45 Ill.App.2d at 15, 195 N.E.2d at 252.

Illinois courts have treated conditional contracts for specified periods of time or of indefinite duration—that is, contracts that will continue for the specific period or indefinitely unless the plaintiff leaves or the defendant terminates for an agreed-upon reason—similarly. In *Gilliland v. Allstate Insurance Co.,* 69 Ill.App.3d 630, 26 Ill. Dec. 444, 388 N.E.2d 68 (1st Dist.1979), for example, the court found unenforceable under the one-year provision an agreement to employ the plaintiff until his retirement as long as he complied with all lawful directions of defendants. *See also Brudnicki,* 535 F.Supp. at 87; *Payne v. AHFI/Netherlands, B.V.,* 522 F.Supp. 18 (N.D.Ill.1980). Although the terms of these contracts specified that the contracts would end if the conditions came to pass, the contingencies apparently were interpreted as interfering with rather than effecting full performance of the contract.

The scenario presented in the instant case, however, is distinguishable from those situations that Illinois courts in the past have found to violate the one-year provision of the Statute of Frauds. The Program promised to employ Lamaster

"for as long as [he] wanted to hold th[e] position" (Complaint ¶ 6). Although this alleged agreement is similar in significant respects, such as its indefinite duration, to contracts for permanent employment, Lamaster's contract, by its own terms, ends when Lamaster no longer wishes it to continue. In this respect, it resembles a contract that ends, by its own terms, upon one of the contractors' or a third parties' death or another contingency; when the contingency occurs, the full service contemplated by the agreement will have been rendered. The *Sinclair I* court explicitly acknowledged that this sort of contract would not be barred by the Statute of Frauds, observing that "[w]here the contract extends to a point in time, be it death or some other circumstance, at which time the full service contemplated will have been rendered, and that point of time could occur within one year, the Statute of Frauds will not be a bar to enforcement of the action." *Sinclair I*, 45 Ill.App.2d at 15, 195 N.E.2d at 252; *see also* E. Farnsworth, *supra* p. 13, at 393–94; A. Corbin, *supra* p. 26, § 446, at 546–47. The *Gilliland*-type of contract, moreover, which continues for a certain period or indefinitely unless some condition occurs, is also distinguishable. The terms of the agreements in those cases contemplate that the contract will continue indefinitely or for the specified period, and the contingency cuts short the contemplated period of performance. By contrast, the period of full performance in the alleged agreement between Lamaster and the Program is defined by the occurrence of the contingency. *See* E. Farnsworth, *supra* p. 13, at 395 (distinguishing termination from performance). The contract in *Martin*, which provided for the employment of the plaintiff until retirement "or until he no longer wished to be employed," can be understood as falling within this rubric, rendering that decision consistent with other Illinois precedent.

Although no Illinois court—including the Illinois Supreme Court—has laid out the analysis in this way, we think that the Supreme Court would likely agree with this approach. It is consistent with the dictum in the *Sinclair I* decision, which was af-firmed by the Illinois Supreme Court, and with the "prevailing dislike" for the one-year clause, *see Goldstick*, 788 F.2d at 464, which is reflected in the interpretation of the Statute as barring only oral contracts that are not *capable* of performance within one year. *See Goldstick*, 788 F.2d at 464. And although the Seventh Circuit has inferred from the two most recent cases in which the Illinois Supreme Court has dealt with the Statute of Frauds that the court has not "been swept up in the 'constant erosion' that has eaten away the statute in other jurisdictions," *Goldstick*, 788 F.2d at 466; *Evans*, 799 F.2d at 368, neither do these cases indicate that the Supreme Court is likely to interpret the one-year provision expansively. *See Sierens v. Clausen*, 60 Ill.2d 585, 328 N.E.2d 559 (1975) (holding that the contract at issue did not violate that clause requiring that contracts for the sales of goods in excess of $500 must be in writing); *Lee v. Central National Bank & Trust Co.*, 56 Ill.2d 394, 308 N.E.2d 605 (1974) (finding that a writing executed well after an oral antenuptial agreement and the marriage to which it pertained satisfied the Statute of Frauds' provision that agreements made upon consideration of marriage must be memorialized by a writing).

Whether the occurrence of a contingency would complete performance or frustrate it "depends in large part on the underlying purpose and specific terms of the agreement itself," *Brudnicki*, 535 F.Supp. at 87, and may not always be obvious, *see* Restatement (Second) of Contracts § 130 comment b (1979), but in the present case, we think that the language of the promise indicates that full performance would be effected when Lamaster no longer chooses to work for the Program. We therefore find that the Statute of Frauds does not preclude enforcement of the alleged oral contract in this case.

## CONCLUSION

For the foregoing reasons, the Program's motion to dismiss Counts II and III of Lamaster's complaint is granted in part and denied in part. Count III is dismissed

on consideration grounds, but without prejudice and with leave to amend.