998 F.2d 1016
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David THAW, Plaintiff-Appellant,
v.
BOARD OF LIBRARY TRUSTEES OF TOWN OF CICERO, Michael
Frederick, Helen Niemeyer, et al., Defendants-Appellees.
 No. 92-1785.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 10, 1992.
Decided July 7, 1993.
 
 Before COFFEY, MANION, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 David Thaw was hired by the Board of Library Trustees of the Town of Cicero, Illinois ("Board") as the Director of Libraries/Head Librarian for the Town of Cicero's Public Library ("Library") in August, 1985. The Board discharged Thaw from that position on January 23, 1991. Thaw responded to his dismissal with the filing of a six-count complaint in the district court against the Board alleging that he was wrongfully terminated. The district court dismissed five of the counts in an oral ruling from the bench on February 11, 1992. The remaining count was a 42 U.S.C. § 1983 claim that in firing Thaw the Board denied him his right under the Fourteenth Amendment to the United States Constitution not to be deprived of property without due process of law. The district court dismissed that count for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Thaw appeals only the dismissal of his § 1983 claim. We affirm.
 
 I.
 
 2
 We review the grant of a motion to dismiss de novo. Caldwell v. Elwood, 959 F.2d 670, 671 (7th Cir.1992). "We view all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff." Id. "We will only dismiss a complaint for failure to state a claim if it appears beyond doubt 'that the plaintiff cannot establish any set of facts which would entitle him to the relief requested.' " Id. (citation omitted).
 
 
 3
 The essence of Thaw's § 1983 claim is that he was unconstitutionally deprived of his property right in continued employment as the Cicero Public Library's Head Librarian. Thaw's "federal constitutional claim depends on [his] having had a property right in continued employment." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985). If he can demonstrate that he had such a right, the Board could not deprive him of this property without due process. Id. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ...' " Id. (citation omitted). Such a state-conferred property interest in public employment is at stake if the employee may not be terminated without "good cause". Id. at 538-39.
 
 
 4
 Under Illinois law, employment contracts are presumed to be "at will" and are therefore terminable by either party for good reason, bad reason or no reason at all. Tolmie v. United Parcel Service, Inc., 930 F.2d 579, 580 (7th Cir.1991) (citing Duldulao v. Saint Mary of Nazareth Hospital Center, 505 N.E.2d 314, 317-18 (Ill.1987)). An employee may rebut this presumption by showing that the parties contracted otherwise, id., and Thaw claims his contract with the Board falls into this category. Specifically, Thaw claims that under the Cicero Public Library Personnel Policy Manual ("Policy") he was guaranteed that he would only be fired for cause. Under Illinois law, "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." Duldulao, 505 N.E.2d at 318. The Library Policy does contain a "just cause" provision applicable to at least some of the employees of the Library. The section captioned "Grievance Procedure" states:
 
 
 5
 If an employee has a complaint or grievance it must be first brought to the attention of the Head Librarian.
 
 
 6
 If no solution is reached a complaint should be submitted in writing to the Library Board of Directors within 10 working days of meeting with Head Librarian.
 
 
 7
 The grievance will then be brought up at the next board meeting. A resolution must be determined by the following board meeting. The decision by the Board is final and the employee must abide by it.
 
 
 8
 No employee who passed the probationary period will be terminated without just cause and due warning.
 
 
 9
 (emphasis added). Thaw states in his brief that this last paragraph is the "basis" for the Board's promise that he "would not be terminated without just cause and due warning." Appellant's Brief at 7. As the district court reasoned, "Thaw's fatal difficulty is that no fair reading of the Policy document would make the Head Librarian ... an 'employee' within the scope of that last paragraph's limitation on firing." The limitation that terminations may be founded on "just cause" after "due warning" applies only to an "employee who passed the probationary period." The Policy refers to this probationary period only one other time. The section captioned, "Staff and Selection and Appointment", provides that:
 
 
 10
 All employees of the Cicero Public Library must have completed high school.
 
 
 11
 The new employee must submit to a physical examination at the library's expense before commencing employment.
 
 
 12
 New employees will have a probationary period for 6 months. At that time the Head Librarian will evaluate the work and progress of the new employee.
 
 
 13
 As the district court reasoned, it would make no sense to treat the Head Librarian as a new employee entitled to a six-month probationary period, following which the Head Librarian would "evaluate" his own "work and progress." Thus, it is evident that the Head Librarian is not classified as an employee entitled to a probationary period. The plain language of the Policy document clearly does not contemplate that the Head Librarian would be a probationary employee. As the district court concluded, the Policy document "carries not the slightest hint that Thaw's employment was probationary in nature--a condition that would of course be highly unusual for the contractual hiring of the chief operating officer of any organization." We consider the district court's reasoning quite persuasive. Just as the head of a large company is technically an "employee", but is not treated as the other line employees for purposes of benefits, insurance or job security, so is the Head Librarian also an "employee" of the Library, but not in the same sense as the workers over whom he had supervision.
 
 
 14
 An Illinois court has recently addressed a claim strikingly similar to Thaw's. In Thierry v. Carver Community Action Agency, 571 N.E.2d 484, 485 (Ill.App.1991), the plaintiff sued for reinstatement to her position as Executive Director, arguing that she was discharged in violation of the defendant's personnel policy. The policy contained a provision listing those employees excluded from its protections; the position of Executive Director was not included in this provision. Id. at 485. However, terminated employees had a right, under the personnel policy, to appeal their discharge to "the Executive Director ... or his designee." Id. at 486. The Illinois appellate court concluded that the plaintiff was not covered by the personnel policy, reasoning that, according to plaintiff's argument, "the appeal of the termination of the Executive Director would be to the Executive Director.... This argument, while it does give new meaning to the term job security, is meritless. The language in the personnel policy cannot be interpreted by a reasonable person to constitute an offer to the Executive Director of the right to a hearing before herself upon her termination." Id. at 487. As we stated above, if, in the instant case, we were to read the Board's Policy document to provide "a probationary period of 6 months" for the Head Librarian, at the end of those six months, the Head Librarian, according to the document's plain language, would "evaluate" his own "work and progress."
 
 
 15
 The district court avoided this absurd result by following the plain language of the Policy, which provides that only employees "who passed the probationary period" cannot be terminated without "just cause" and "due warning" and ruling that the Head Librarian was not one of the probationary employees so protected. The language of the Policy document is clear and unambiguous in this regard, and therefore the interpretation of its provisions was properly for the district court. See Quake Construction v. American Airlines," 565 N.E.2d 990, 994 (Ill.1990). We agree with the conclusion of the district court that "the Policy on which [Thaw] places total reliance for the 'just cause' limitation on firing did not apply to him."[1]
 
 
 16
 In attacking the district court's reasoning, Thaw points out that the first sentence of the Policy document states the "purpose of this personnel policy is to provide a reference document for the use of library staff--and administration on matters relating to library employees." He maintains that this indicates that the Policy "was intended to be relied upon by staff--and administration." True enough, but the question here is not whether any of the provisions of the document applied to him but whether the provisions requiring just cause and due warning before termination of employees who have passed the probationary period were applicable to Thaw. As we explained above, the language of the Policy conclusively demonstrates that the crucial provisions did not apply to the Head Librarian. This conclusion is buttressed by the fact that several other provisions in the Policy document draw distinctions between the Head Librarian and other Library employees. For example, the section captioned "Vacation" states that "[n]o more than 2 weeks of vacation may be taken at one time, except with special permission of the Head Librarian" and that "[v]acations are scheduled at the discretion of the Head Librarian, so as not to disrupt service to the public." The Policy document also instructs employees that they "must have prior approval of the Head Librarian" before attending "meetings and workshops", and that they "may take advantage of library discounts by purchasing books or other library materials through technical services on approval of Head Librarian."
 
 II.
 
 17
 The Policy document did not bind the Board to terminate the Head Librarian only after due warning and for just cause. Therefore, Thaw did not possess a constitutionally-cognizable property right in his employment. The district court properly dismissed his 42 U.S.C. § 1983 action for failure to state a claim.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 In its ruling, the district court observed that Thaw's complaint "carries not the slightest hint that Thaw's employment was probationary in nature." Indeed, although the complaint alleges that the Policy document "governed plaintiff's employment relationship with the Board" and sets out the relevant provisions Thaw argues created his protected status, the complaint does not specifically allege that Thaw served and passed a probationary period at the start of his employment as Head Librarian. The complaint merely states that "[i]n August, 1985, plaintiff accepted an offer of employment from the defendant Board ... to work as Director of Libraries for Cicero; and plaintiff began working for Board." Thaw's failure to specifically make this crucial allegation in his complaint is further support for our conclusion that he was not a probationary employee